In the
United States Court of Appeals
For the Seventh Circuit

Nos. 99-4266 & 99-4285

Thomas J. Moriarty, Trustee on behalf of the
Trustees of the Local Union No. 727, I.B.T.
Pension Trust, and the Trustees of the
Teamsters Local Union No. 727 Health
and Welfare Trust,

Plaintiff-Appellee/Cross-Appellant,

v.

James F. Svec, individually and d/b/a Svec & Sons
Funeral Home and West Suburban Livery,

Defendant-Appellant/Cross-Appellee.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 96 C 7392--George W. Lindberg, Judge.

Argued October 24, 2000--Decided November 27, 2000

Before Flaum, Chief Judge, and Manion and Evans,
Circuit Judges.

Flaum, Chief Judge. In this successive appeal,
James F. Svec, now a half-owner of Svec & Sons
Funeral Home ("Home") and majority owner of West
Suburban Livery ("WSL"), two sole
proprietorships, challenges the district court's
determination that Home owes contributions on his
behalf to a pension fund and a health and welfare
fund, both of which have plaintiff Thomas J.
Moriarty on their respective boards of trustees.
In addition, both James and Moriarty appeal the
amount of attorney's fees awarded to Moriarty.
For the reasons stated herein, we vacate and
remand for further consideration.

I. Background

The facts of this dispute that occurred prior
to 1999 are recounted in the first decision
regarding this case, Moriarty v. Svec, 164 F.3d
323 (7th Cir. 1998), and will be restated here
only to the extent necessary. James's father
Elmer was the sole owner of Home and half-owner
of WSL until his death on June 29, 1987. James
owned the other half of WSL and worked as a

funeral director for Home. Home, as part of the Funeral Directors Services Association of Greater Chicago ("FDSA"), was bound by a collective bargaining agreement ("CBA"). The CBA required Home to make contributions on behalf of its employees, including funeral directors, to a pension fund and a health and welfare fund until the end of 1995, when James caused Home to withdraw from the FDSA. In 1997, after an audit of Home and WSL, Moriarty sued on behalf of these funds to recover contributions that WSL allegedly owed on behalf of its employees ("Claim I") and Home supposedly owed on behalf of James ("Claim II"). Moriarty employed (and continues to employ) the law firm of Jacob, Burns, Orlove, Stanton & Hernandez ("Jacob, Burns") to litigate against James. Moriarty acknowledges that under the CBA contributions are not required for principal owners. After some preliminary investigation, Moriarty believed that James became the principal owner of Home on April 15, 1993. Moriarty then sought contributions in the amounts of $17,802.50 for Claim I for the period from October 1993 to December 1995 and $32,727.00 for Claim II for the period from January 1987 to April 1993, for a total of $50,529.50.

James argued that Home did not owe contributions on his behalf because he was a principal owner of Home. James also claimed that WSL was not a signatory to the CBA and so no contributions were owed for its employees. The district court decided in favor of Moriarty on February 23, 1998. In its first decision in this case, the district court held that the CBA is unambiguous and that James was an employee of Home for purposes of the CBA, regardless of his ownership status, because he is a funeral director. Thus, Home owed contributions on his behalf. The lower court also used the "single employer" doctrine to find that WSL and Home were a single organization for purposes of the CBA. Because Home was bound by the CBA, WSL was as well and so contributions were owed for WSL's employees.

The district court also awarded attorney's fees, as required by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. sec. 1132(g)(2)(D), in cases where a plan fiduciary successfully recovers delinquent contributions. Moriarty requested hourly rates of $225 and $200 for Jacob, Burns, which claimed its rates were depressed due to the firm's dedication to the labor movement. Moriarty apparently did not inform the district court of the rate Jacob, Burns actually charged. James challenged these rates, but likewise did not submit evidence of Jacob, Burns's actual billing rates to the court. The district court used the rates requested by

Moriarty in entering a judgment that included $120,928.48 in attorney's fees.

James appealed. This court rejected James's claim that the National Labor Relations Board ("NLRB") has exclusive jurisdiction to determine whether Home and WSL should be treated as a single employer and affirmed the district court's holding that WSL and Home should be considered a single organization for purposes of the CBA. 164 F.3d at 332-35. However, the lower court's holding that the CBA is unambiguous was reversed, and we remanded to the district court to receive extrinsic evidence on how the term "employee" in the CBA should be interpreted. Id. at 329-32. Regarding attorney's fees, the opinion notes James's objections and states "While we realize that this award may have to be adjusted on remand to reflect any additional proceedings, we see no error in any of the cost and fee calculations the court has already ordered." Id. at 327 n.3.

On remand, the district court found that the term "employee" in the CBA excludes principal owners from its definition. The court further found that James became a principal owner of Home on June 29, 1987, and so Moriarty could not recover for Claim II after that date. However, the court ruled in Moriarty's favor on Claim II for the period from January 1, 1987 to June 29, 1987. James argued that he was not an employee during this truncated time period, claiming that the single employer doctrine and the Labor Management Relations Act ("LMRA"), which excludes the children of employers from its definition of "employee," 29 U.S.C. sec. 152(3), should be used to interpret the CBA. However, the district court rejected these contentions. Because Moriarty's success on Claim II covered a much shorter period of time than it did after the district court's first decision, the court reduced Moriarty's recovery on this claim from $32,727.00 to $2,389.00.

Moriarty requested attorney's fees for the period following the district court's first decision, while James asked that the court reduce the fees Moriarty had already been awarded and challenged Moriarty's request for additional fees. The district court used the date of its first decision to divide the case into two phases: the first from August 1995 until February 23, 1998 ("Phase I"), and the second from February 24, 1998 until the present ("Phase II"). James argued that the district court's prior Phase I award, which was based on Moriarty recovering over $32,000 for Claim II, should be reduced to reflect Moriarty's lack of success. The district court agreed and divided the Phase I award in half, with one half representing the

time spent on Claim I and the other half representing the time spent on Claim II. The court then reduced the amount of the Phase I recovery on Claim II to ten percent, in order to reflect Moriarty's "extremely limited success" on this claim. Thus, the district court awarded Moriarty attorney's fees of $66,511.32 for Phase I, or fifty-five percent of the original award.

Moriarty requested 418.7 hours of attorney time at rates of $315 and $345 for Phase II. James, now armed with the knowledge that Jacob, Burns actually charged Moriarty $165, challenged Moriarty's request on a variety of grounds. James also produced evidence that two other firms that prosecute ERISA collection cases for unions charge $160. The district court decided that $165 was the market rate for prosecuting ERISA collection actions, and based its award on that amount. The court also stated that Moriarty was not entitled to time spent during Phase II litigating the issue of when James became the Funeral Home's owner because James "prevailed" on these "claims" rather than Moriarty. The court then awarded $60,000 for Phase II, indicating that the court credited Jacob, Burns with 363.6 hours. Both parties appeal the attorney's fee awards, and James also appeals the finding that Home is liable on Claim II.

II. Discussion

A. Home's Contributions on Behalf of James

James has two arguments as to why he was not an employee of Home during the first half of 1987./1 The first is that the definition of employee used in LMRA, which excludes the children of employers, should be used to interpret the CBA. The second is that judicial estoppel requires that the single employer doctrine be used to determine whether he was a principal owner of the Home/WSL combination.

1. LMRA definition.

The LMRA provides that, for purposes of determining an appropriate bargaining unit "any individual employed by his parent or spouse" is not included within the definition of "employee." 29 U.S.C. sec. 152(3). ERISA's definition of employee is "any individual employed by an employer." 29 U.S.C. sec. 1002(6). James claims that LMRA's definition of "employee" should be used to interpret the CBA rather than ERISA's because ERISA was not passed until well after the trust agreements creating the funds were formed, which was in 1961 and 1963. The district court relied on the ERISA definition and the CBA's explicit exclusion of trainees but not children

of employers in determining that such children were employees on whose behalf contributions are owed. We review the district court's interpretation of pension plan terms de novo. Moriarty, 164 F.3d at 330.

We agree with the district court that the definition contained in 29 U.S.C. sec. 152(3) should not be used to interpret the CBA. Even assuming without deciding that LMRA rather than ERISA should be used to interpret the CBA, James's argument that he is not an employee because he was Elmer's son would not succeed. Within LMRA itself, the definition of "employee" is broader than that contained in sec. 152(3) when determining whether an employer may make payments to workers by means of a trust fund under sec. 186(c)(5). See Reiherzer v. Shannon, 581 F.2d 1266, 1276 (7th Cir. 1978), abrogated in other part by Black v. TIC Inv. Corp., 900 F.2d 112 (7th Cir. 1990). For example, retired workers are not "employees" for purposes of sec. 152(3) but are "employees" under sec. 186(c)(5). See Allied Chem. & Alkali Workers of Am. v. Pittsburgh Plate Glass Co., 404 U.S. 157, 170 (1971). The portion of the CBA about which James is arguing concerns a trust fund, and so the broader definition of sec. 186(c)(5) should be used to interpret the CBA rather than sec. 152(3). Whether children of employers would be considered "employees" for purposes of sec. 186(c)(5) is unclear. Thus, LMRA does not support James's construction of "employee" in the CBA.

2.  Judicial estoppel.

The doctrine of judicial estoppel provides that when a party prevails on one legal or factual ground in a lawsuit, that party cannot later repudiate that ground in further litigation based on the same underlying facts. See Menominee Indian Tribe of Wisc. v. Thompson, 161 F.3d 449, 454 (7th Cir. 1998); McNamara v. City of Chicago, 138 F.3d 1219, 1225 (7th Cir. 1998). Moriarty prevailed on Claim I by using the "single employer" doctrine, which provides that when two entities/2 are sufficiently integrated these will be treated as a single entity for certain purposes. See Moriarty, 164 F.3d at 332. Moriarty successfully argued that Home and WSL are a single organization such that the employees of WSL would be considered the employees of Home for purposes of contributions to the funds under the CBA. Thus, James is correct that Moriarty is now estopped from arguing that the single employer doctrine cannot be applied in determining whether James is an employee of Home.

Both James and Moriarty agree that a "principal owner" rule applies to interpret the CBA, under

which those who work at one of the firms within the FDSA are not considered employees for purposes of the CBA if they own a certain percentage of the firm. Because of his half-ownership in WSL, James could not have been considered an employee of WSL under the principal owner rule. In the current litigation, employees of WSL and Home are considered to be the employees of a combined Home/WSL organization for purposes of the contributions required under the CBA. A nominal employee of Home/WSL is entitled to show that his or her ownership of WSL or Home translates to sufficient ownership of the Home/WSL organization such that the principal owner rule applies and he or she is not considered an employee for purposes of the CBA. Thus, the lower court erred in not taking account of James's partial ownership of this combined Home/WSL organization through his ownership of WSL in determining whether he is an employee of the Home part of this combined entity such that Home owes contributions on his behalf.

However, two factual questions prevent this court from determining whether James should prevail on Claim II. The first involves the percentage of the Home/WSL combination that James owned. James claims that because he owned half of WSL and there are two entities in this combination, James owned one quarter of Home/WSL during the relevant time period. However, this is not necessarily correct; WSL may have been much smaller than Home, such that James's half-ownership of WSL amounted to owning only a tiny fraction of Home/WSL. We remand to the district court to determine the relative sizes of Home and WSL during the first half of 1987 and thus what percentage of Home/WSL James owned by his half-ownership of WSL. In calculating these sizes, the district court should be guided by the annual revenues of Home and WSL, which is what the NLRB uses in its applications of the single employer doctrine. See Goodman Investment Co., 292 N.L.R.B. 340, 347-48 (1989). The second factual question concerns what percentage of ownership is necessary before James is considered a principal owner under the CBA. James claims that ten percent ownership is sufficient, but Moriarty has an opportunity on remand to show that this figure is incorrect.

B.  Attorney's Fees

Both parties challenge the amount of attorney's fees awarded to Moriarty in this case. ERISA provides for a mandatory award of reasonable attorney's fees when a plan fiduciary prevails in an action to collect delinquent contributions. 29 U.S.C. sec. 1132(g)(2)(D). A district court generally has wide discretion in determining a

reasonable attorney's fee award, and we review only for abuse. See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). However, when fees are adjusted because of a principle of law our review is de novo. See Jaffee v. Redmond, 142 F.3d 409, 412-13 (7th Cir. 1998).

1.  Phase I.

James claims that the approximately $66,000 awarded to Moriarty for Phase I is unreasonable. Moriarty claims that the lower court made legal errors in reducing the Phase I award from approximately $120,000 to $66,000 on remand because of Moriarty's reduced success on Claim II. We conclude that the district court did not err in determining the amount of the Phase I award, though an adjustment may have to be made depending on the resolution of Claim II on remand.

James's argument can be disposed of quickly. James raised certain objections to the Phase I award when this case first appeared before this court./3 164 F.3d at 327 n.3. We rejected his contentions, and since James has not provided any good reason for reconsidering our determination, these objections are barred by the law of the case doctrine. See Blue Cross and Blue Shield United of Wis. v. Marshfield Clinic, 152 F.3d 588, 591 (7th Cir. 1998). Any of James's remaining claims against the Phase I award should have been brought during the prior appeal, and James has forfeited these by failing to do so. See Gibson v. West, 201 F.3d 990, 992 (7th Cir. 2000).

Some of Moriarty's objections require more sustained analysis. Moriarty's first claim is that any reduction in the Phase I fees is prohibited by language in the first opinion of this court, which states that "we see no error in any of the cost and fee calculations the [district] court has already ordered." 164 F.3d at 327 n.3. However, immediately preceding this phrase the opinion states that "we realize that this award may have to be adjusted on remand to reflect any additional proceedings." Id. This language plainly demonstrates that we did not freeze the amount of the Phase I award but rather explicitly invited the district court to adjust it in accord with subsequent proceedings. After conducting further proceedings, the lower court determined that Moriarty's success on Claim II was much less than when it had made the award, and so adjusted the award accordingly. The district court did not violate the law of the case in making such an adjustment.

Moriarty next argues that Claim I and Claim II are intertwined, such that the attorney's fees awarded for the whole action should not have been reduced because of a lack of success regarding Claim II. Moriarty claims that Jaffee, 142 F.3d at 414, supports his argument and that we should review the district court's decision de novo, but he is incorrect on both counts and his argument fails for two independent reasons.

First, Claim I and Claim II are not related for purposes of Jaffee or Hensley, 461 U.S. at 435. Jaffee holds that where a party presents multiple claims for relief based on a common core of facts or related legal theories, no legal bar exists against awarding attorney's fees for time spent on rejected claims. 142 F.3d at 413. As presented by Moriarty, Claim I relies on the facts that Home is covered by the CBA, WSL and Home are integrated enterprises, and the legal theory that WSL and Home are a single employer. Claim II relies on the facts that James worked at Home as a funeral director, the CBA requires contributions on behalf of Home employees, and the mixed question of law and fact as to whether James was a principal owner of Home through his ownership of WSL. The mere circumstance that both of these claims depend on Home being covered by the CBA is not sufficient to make these interrelated. No dispute existed regarding Claim I as to whether Home was covered by the CBA. For Claim II, the main questions were whether the principal owner rule, which was not an issue in Claim I, should be applied to the CBA and when James became such an owner. Thus, none of the time spent litigating Claim II would have aided Moriarty in prevailing on Claim I. Therefore, these two claims are distinct, such that if Moriarty loses on Claim II, no attorney's fees could be rewarded for that claim as a matter of law. See Hensley, 461 U.S. at 434-35; Jaffee, 142 F.3d at 413. Because these two claims are discrete, Moriarty cannot leverage his success on Claim I into success on Claim II. Thus, since Moriarty achieved significantly worse results regarding Claim II on remand, the district court did not abuse its discretion in reducing the Phase I award for that claim.

Second, even if these two claims were related, the district court did not rule as a matter of law that attorney's fees could not be awarded for Claim II, as the lower court in Jaffee did, 142 F.3d at 413, but rather exercised its discretion in reducing the attorney's fees for Claim II. Unlike in Jaffee, the district court here did in fact award attorney's fees to Moriarty for Claim II. However, the district court exercised its discretion in reducing the Phase I award because of Moriarty's limited success on that claim.

Where the prevailing party has achieved only limited success, the standard lodestar method may yield an excessive award and the district court may reduce the lodestar result. See Hensley, 461 U.S. at 436.

Moriarty's final argument is that James withheld evidence of when he became the owner of Home, causing the litigation to be prolonged unnecessarily. Moriarty claims that the Phase I award should not have been reduced because of James's tactics. However, the parties fiercely dispute whether Moriarty knew or should have known that James became the owner of Home on June 29, 1987. James claims that he gave Moriarty copies of Illinois state court probate documents, which conclusively establish when James became the owner of Home, and that Moriarty incurred fees attempting an impermissible collateral attack on the probate court's judgment. Such contested issues of facts are left to the district court. The district court's reduction in the Phase I award indicates that it found that James did not improperly prolong the litigation, and this finding is not clearly erroneous. In sum, the district court did not abuse its discretion in reducing the Phase I award to reflect Moriarty's lack of success on Claim II.

All of the challenges of both parties to the Phase I award have been considered and rejected. Any objections to this award that we have not considered are forfeited. On remand, absent a reason that justifies changing the law of the case, the Phase I award should not be disturbed if Moriarty prevails on Claim II. If James prevails on Claim II, then, as noted above, Moriarty cannot recover attorney's fees for Claim II as a matter of law, and the district court must reduce the Phase I award accordingly.

2. Phase II.

Both parties bring myriad challenges to the Phase II attorney's fee order. The district court's order awarding Phase II fees is terse, but provides sufficient explanation for most of the lower court's determinations. We find no error in the explanations that are provided in this order. However, because we cannot be certain that the district court considered specific significant objections made by James, we vacate the award and remand to the district court. See Hensley, 461 U.S. at 437.

a) Phase II attorney's fee order.

The district court entered an order regarding

attorney's fees on October 29, 1999 that dealt with the Phase II award. In this order, the court stated that the evidence the parties provided to it shows that $165 is the market rate for "attorneys prosecuting ERISA collection actions." The court also stated that Moriarty could not recover the time he spent during Phase II litigating over when James became Home's owner, because James "prevailed" on that "claim." Moriarty argues that $165 (the rate Jacob, Burns actually charged him) is too low because the district court awarded Moriarty a higher rate for Phase I and Jacob, Burns artificially deflates its rate to favor the labor movement. He also claims that the lower court erred by focusing on only the plaintiff's side of ERISA litigation rather than defense and plaintiff's attorneys as a whole. Finally, he contends that the hours he requested should not have been reduced because of whatever success James may have had on Claim II.

Given the evidence before it, the district court did not abuse its discretion in deciding that $165 is the hourly rate for Jacob, Burns's work. James produced evidence that two other firms charge multiemployer union pension plans $160 per hour. More importantly, Jacob, Burns charges between $150 and $200 for all of its clients, and charged Moriarty a rate of $165. The lawyer's regular rate is strongly presumed to be the market rate for his or her services. See Central States Pension Fund v. Central Cartage Co., 76 F.3d 114, 116-17 (7th Cir. 1996); Gusman v. Unisys Corp., 986 F.2d 1146, 1150 (7th Cir. 1993).

Jacob, Burns's claim that it and the two other union firms charge less than their market rate is unavailing. If an attorney charges most clients a high fee, and then represents a client pro bono or for a reduced fee, that attorney's presumable market rate in the pro bono or reduced-fee case is still the attorney's normal high rate. See Central Cartage, 76 F.3d at 117, Gusman, 986 F.2d at 1150-51. Jacob, Burns's case differs because it does not have a high, regular rate from which it deviates to make gifts to unions. James produced evidence that Jacob, Burns's rate to all clients in the various litigation that it undertakes is between $150 and $200 per hour; this is the firm's presumptive market rate. See Central Cartage, 76 F.3d at 117 ("[T]he union's lawyer had a low rate for everything; that normal rate, we held, is the market rate."). James also produced the similar rates of two other firms that engage in the same kinds of litigation as Jacob, Burns, further supporting his claim that Jacob, Burns's market rate is $165. Moriarty cites the claims of Jacob, Burns and the two other union firms that all of their market rates

are depressed because of their dedication to the labor movement. However, the district court was not required to credit these assertions in the face of their actual market rates for all of their clients.

The district court's award of lower rates for Phase II than Phase I was likewise not an abuse of discretion. James produced more evidence for the Phase II attorney's fee hearing, including Jacob, Burns's actual billing rates and the rates of the other two union ERISA firms, than he had done at the Phase I hearing. The district court could rely on such new evidence in determining that Jacob, Burns's rate was actually lower than what the court had awarded for Phase I.

Moriarty's claim that the district court erred by focusing only on firms that prosecute ERISA collection actions is similarly unsuccessful. The district court's discretion in determining what is a reasonable attorney's fee applies to its determination of what constitutes a market. Attorneys who specialize in a specific area of litigation may be paid more or less than lawyers who work in related areas of the law. Similarly, certain kinds of litigation defense attorneys may make more than plaintiff's lawyers or vice versa. Basing fee awards on such distinctions, as long as these are reasonable and supported by the record, are left to the sound discretion of the district court. Given the evidence presented to the district court, we do not find an abuse of discretion in determining that Jacob, Burns was in a market composed of firms prosecuting ERISA collection actions.

We also reject Moriarty's final objection, that the district court erred by reducing the attorney's fees because James "prevailed" on the "claims" of when James became Home's owner. While the fee order's language is imprecise, the district court did not abuse its discretion. At the time of this order, Moriarty had been awarded judgment on Claim II for approximately $2,400. This award means that Moriarty was still the prevailing party/4 on Claim II, see Farrar v. Hobby, 506 U.S. 103, 112 (1992) (holding that a plaintiff who wins any measure of damages is a prevailing party for the purposes of fee-shifting statutes) and was entitled to reasonable fees under 29 U.S.C. sec. 1132(g)(2)(D). We do not read the district court's order to state that Moriarty was not a prevailing party on Claim II at the time of the order. The district court reduced the hours claimed by Moriarty from 418.7 to 363.6, a decrease of approximately only thirteen percent. Given that the district court apportioned Jacob, Burns's time evenly between Claims I and II in reducing the Phase I award,

and that the district court could not have awarded any hours on Claim II if James was the prevailing party (as explained above), the district court was only reducing the hours claimed by Moriarty because of a lack of success rather than stating that Moriarty had not prevailed on Claim II. The district court did not abuse its discretion in making such a reduction given Moriarty's limited success on Claim II at the time of the fee order.

b)  Settlement offer.

James claims that he made a settlement offer of $43,000 on December 30, 1997./5 Moriarty contends that James did not comply with the technical requirements of Fed.R.Civ. P. 68, but appears to acknowledge that James did in fact make a settlement offer for $43,000 that was rejected by Moriarty. The district court's Phase II fee order does not mention this attempted settlement.

Substantial settlement offers should be considered by the district court as a factor in determining an award of reasonable attorney's fees, even where Rule 68 does not apply. See Sheppard v. Riverview Nursing Center, Inc., 88 F.3d 1332, 1337 (4th Cir. 1996). Attorney's fees accumulated after a party rejects a substantial offer provide minimal benefit to the prevailing party, and thus a reasonable attorney's fee may be less than the lodestar calculation. See Marek v. Chesny, 473 U.S. 1, 11 (1985). Determining whether an offer is substantial is left in the first instance to the discretion of the district court. Nevertheless, an offer is substantial if, as in this case, the offered amount appears to be roughly equal to or more than the total damages recovered by the prevailing party. In such circumstances, a district court should reflect on whether to award only a percentage (including zero percent) of the attorney's fees that were incurred after the date of the settlement offer.

The district court must only consider the substantial settlement offer; it need not reduce the lodestar calculation because of the offer. We stress that a substantial offer is only one of the factors that a district court should evaluate in making an attorney's fee award, and (absent an offer complying with Rule 68 where that Rule applies) is not necessarily determinative. The district court may evaluate the settlement offer and decide that under the circumstances of a particular case an unadjusted lodestar method still provides a reasonable attorney's fee. However, because the Phase II fee order does not mention James's offer and so we cannot determine

whether it was a factor in the award, we remand to the district court to consider the settlement offer in determining a reasonable Phase II attorney's fee. See Fleming v. County of Kane, 898 F.2d 553, 563-64 (7th Cir. 1990).

> c) Proportionality.

James claims that the Phase II fees awarded are unreasonable because these are disproportionately large compared to the amount of damages claimed and the amount of damages actually recovered by Moriarty. We have not formulated any mechanical rules requiring that a reasonable attorney's fee be no greater than some multiple of the damages claimed or recovered. See Connolly v. National Sch. Bus Serv., Inc., 177 F.3d 593, 597 (7th Cir. 1998). However, proportionality concerns are a factor in determining what a reasonable attorney's fee is. See City of Riverside v. Rivera, 477 U.S. 561, 585-86 & n.3 (1986) (opinion of Powell, J.); Perez v. Z Frank Oldsmobile, Inc., 223 F.3d 617, 625-26 (7th Cir. 2000); Cole v. Wodziak, 169 F.3d 486, 488 (7th Cir. 1999).

The Phase II fee order does not provide any indication that proportionality concerns were considered in determining the attorney's fees awarded in this case, despite the size of the total amount of attorney's fees compared to the amount of damages claimed and the amount of damages recovered by Moriarty. While such disproportionality is not determinative and this court has approved attorney's fees many times the amount of damages recovered, see Connolly, 177 F.3d at 597, the district court's fee order should evidence increased reflection before awarding attorney's fees that are large multiples of the damages recovered or multiples of the damages claimed./6 Because the Phase II fee order does not provide any indication that these concerns were factored into the attorney's fee award, we remand for such evaluation. See Fleming, 898 F.2d at 563-64. On remand, the district court should consider the amount of attorney's fees already awarded in Phase I in determining a reasonable amount for Phase II, though the Phase I award should not be adjusted except as aforementioned. We emphasize that any disproportionality that may be present in this case does not mean that the amount of attorney's fees awarded for Phase II was an abuse of discretion, but only that the district court should consider such proportionality factors in exercising its discretion in fashioning a reasonable attorney's fee.

d) James's other objections.

James raises a number of less significant objections to the district court's fee order, such as that Jacob, Burns's time entries are vague or that Jacob, Burns billed too much time working on the appeal in light of the firm's experience. These issues are left to the sound discretion of the trial court and, unlike in the case of substantial settlement offers or disproportionality, the district court need not demonstrate in a fee order that it has considered each individual objection. See EEOC v. AIC Sec. Investigations, Ltd., 55 F.3d 1276, 1288 (7th Cir. 1995). After a review of the record, we find that the district court acted within its discretion in rejecting James's claims on these issues.

As with Phase I, we have adjudicated all of the parties' objections to the Phase II fee award. The Phase II fee award may be adjusted downward after the district court considers James's settlement offer and the possible disproportionality of the award. In addition, if James prevails on Claim II, the district court must ensure that the Phase II award compensates Moriarty only for the time spent on Claim I. Any reason for changing the Phase II award besides these three is either forfeited or barred by the law of the case.

III. Conclusion

Because of judicial estoppel, the single employer doctrine must be used to determine whether James was a principal owner of the Home/WSL organization during the first half of 1987 for purposes of Claim II. The district court did not abuse its discretion in awarding the Phase I attorney's fees, and on remand the Phase I fees should be adjusted only if James prevails on Claim II. The fee order for Phase II does not establish that certain important factors, namely, a substantial settlement offer and the possible disproportionality of the attorney's fee award to both the damages claimed and the damages recovered, were considered, and we remand to the district court to consider James's contentions and Moriarty's replies on these issues in determining a reasonable Phase II attorney's fee. In addition, as with the Phase I award, the Phase II award must be adjusted if James prevails on Claim II. For the reasons stated herein, we Vacate the decision of the district court and Remand for further proceedings consistent with this opinion.

/1 In addition, James continues to argue that exclusive jurisdiction to decide Claim I is vested in the NLRB. James does not bring any new

theories, but continues to argue the same ones that we considered in the first case. We rejected James's argument in our initial decision, 164 F.3d at 334, and James's attempt to resurrect it without good reason is barred by the law of the case. See Blue Cross and Blue Shield United of Wis. v. Marshfield Clinic, 152 F.3d 588, 591 (7th Cir. 1998).

/2 We note, as we did in our first decision, 164 F.3d at 331 n.7, that Home and WSL are sole proprietorships, and are not legal entities distinct from their owner, James, in the way that properly formed corporations are. We use the word "entity" when explaining the single employer doctrine only because this is the language in which the doctrine is normally formulated.

/3 These objections were that the district court incorrectly awarded Moriarty attorney's fees for: time spent preparing for a trial that did not occur; pursuing claims against James's sister Sharon who was eventually dropped from the lawsuit; awarding a Jacob, Burns associate the same amount as more experienced attorneys.

/4 Unlike many other fee-shifting statutes, 29 U.S.C. sec. 1132(g)(2) does not use the term "prevailing party," but rather speaks of when "judgment in favor of the plan is awarded." Because Congress used the latter language only to specify that a pension plan, and not a participant or beneficiary, can take advantage of 29 U.S.C. sec. 1132(g)(2), case law regarding prevailing parties is applicable to this section of ERISA.

/5 While James refers to this offer in his brief as a Fed.R.Civ.P. 68 offer of judgment, whether he intends to claim that his settlement offer complied with that Rule is unclear. Further, he does not develop an argument based on Rule 68, and thus we consider his objection to the district court's fee order as involving only the lower court's apparent failure to consider a substantial offer of settlement.

/6 Where a statute provides for certain enhancements (or reductions) to damages, as 29 U.S.C. sec. 1132(g)(2) does, the district court should apply these adjustments to the damages claimed and the damages recovered in deciding whether to reduce attorney's fees because of disproportionality.