In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 03-1699 and 03-1743

THOMAS J. MORIARTY, Trustee on Behalf of the Local Union
No. 727, I.B.T. Pension Trust, and the Teamsters Local
Union No. 727 Health and Welfare Trust,

*Plaintiff-Appellee,*
*Cross-Appellant,*

*v.*

JAMES F. SVEC, individually and doing business as
SVEC & SONS FUNERAL HOME and doing business as WEST
SUBURBAN LIVERY,

*Defendant-Appellant,*
*Cross-Appellee.*

Appeals From the United States District Court
for the Northern District of Illinois, Eastern Division
Case No. 96-C-7392—**George W. Lindberg**, Judge.

ARGUED SEPTEMBER 28, 2005—DECIDED NOVEMBER 21, 2005

Before FLAUM, *Chief Judge,* and MANION and EVANS,
*Circuit Judges*

FLAUM, *Chief Judge.* In this successive appeal, James F.
Svec ("Svec"), the owner of Svec & Sons Funeral Home

("Home") and West Suburban Livery ("WSL"), two sole-proprietorships, appeals the district court's determination that Svec was an employee during the relevant time period and was therefore required under a collective bargaining agreement to make contributions on his behalf to a pension fund and a health and welfare fund ("Funds"), both of which have plaintiff Thomas J. Moriarty on their respective boards of trustees. Both Svec and Moriarty appeal the amount of attorneys' fees and costs awarded to Moriarty; Svec appeals the district court's determination that he must pay interest, double interest, and audit costs to Moriarty; Svec appeals the district court's decision not to sanction Moriarty under 28 U.S.C. § 1927; and Svec appeals the district court's determination that it had jurisdiction over plaintiff's claims against WSL. For the reasons stated herein, we affirm in part and vacate and remand in part.

## I. Background

This Court has addressed the dispute between Svec and Moriarty on two prior occasions. *See Moriarty v. Svec*, 164 F.3d 323 (7th Cir. 1998) ("*Moriarty I*"); *see also Moriarty v. Svec*, 233 F.3d 955 (7th Cir. 2001) ("*Moriarty II*"). After nearly ten years of protracted litigation, this case appears to have reached its conclusion. While there are issues remaining that affect the parties, the primary subject of this appeal is the attorneys' fees awarded by the district court. The facts of the original dispute are detailed in this Court's prior decisions; the facts contained herein are limited to those necessary to discuss the issues pending before this Court.

Until his death on June 29, 1987, James Svec's father, Elmer Svec, was the sole owner of Svec & Sons Funeral Home and the half-owner of West Suburban Livery. As part of the Funeral Directors Services Association of Greater Chicago ("FDSA"), Home was bound by a collective bargain-

ing agreement ("CBA") to make contributions on behalf of its employees, including funeral directors, to a pension fund and a health and welfare fund.

In *Moriarty II*, this panel remanded two issues to the district court. The first issue the district court was instructed to consider was what percentage of ownership Svec had in Home and WSL for the time period at issue, January 1, 1987 to June 29, 1987. Both parties admit that using the formula mandated by the Seventh Circuit, *see Moriarty II*, 233 F.3d at 963 (citing *Goodman Investment Co.*, 292 N.L.R.B. 340, 347-48 (1989)), Svec owned 3.82% of the integrated enterprise, Home and WSL, during the relevant time period.

The second issue this Court remanded for determination was "what percentage of ownership is necessary before Svec is considered a principal owner under the CBA[?]" *Id.*

The amount in dispute for the period from January 1, 1987 through June 29, 1987, consists of $1,451 allegedly owed by Home to the Health and Welfare Fund and $1,038 allegedly owed by Home to the Pension Fund. After nearly ten years of exhaustive litigation, the potential attorneys' fees and costs in this case dwarf these claims.

On July 23, 2002, on remand from *Moriarty II*, the district court granted Moriarty's motion for summary judgment on the remaining ownership issues. The district court found that Svec owned 3.82% of the integrated enterprise from January 1, 1987 to June 29, 1987.

Although Svec had repeatedly advocated for a 10% ownership rule, under which any person owning less than 10% of a business would be considered an employee, Svec introduced a new position regarding the requirements for "substantial" or "significant" ownership. Svec proposed a new rule under which he, as the son of the owner, would have been considered a "substantial" or "significant" owner on the basis of his father's ownership. The district court

rejected this new formulation and found that, "Defendant has presented no evidence showing that [the 10% rule] was in any way inconsistent with the collective bargaining unit or that it is unreasonable. . . . Accordingly, no reasonable jury could find against the plaintiff on the issue of whether 3.82% ownership was sufficient for defendant to be a significant or substantial owner."

Svec also brought a motion for attorneys' fees under 28 U.S.C. § 1927. That statute provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

Svec's claim for attorneys' fees was based upon an allegation that Moriarty knew Svec owned the funeral home after his father's death on June 29, 1987, and unreasonably pursued claims for contributions for that time period anyway. The district court found that although plaintiff's counsel had acted unreasonably by failing to look in the court file of Elmer Svec's estate to determine ownership, such conduct was not "vexatious." The district court therefore denied Svec's motion for attorneys' fees under 28 U.S.C. § 1927.

On October 8, 2002, the district court issued two of the seven orders that make up its findings on remand. Moriarty requested a recovery of $277,644.06 from Svec. Of this, $191,779.28 were attorneys' fees. The district court found that these attorneys' fees covered too long a time period. Citing this Court's ruling in *Moriarty II*, the district court found that because the defendant had made a substantial offer to settle on December 30, 1997, for $43,000, Svec was not liable for attorneys' fees Moriarty incurred after that date. Memorandum and Order of October 8, 2002, at 3 (quoting *Moriarty II*, 233 F.3d at 967 ("an offer is substan-

tial if, as in this case, the offered amount appears to be roughly equal to or more than the total damages recovered by the prevailing party"). In addition, the district court found that an offer made by Svec to settle for $43,424.26 on November 17, 1997, was also a substantial offer.[1] Memorandum and Order of October 8, 2002, at 5. As a result, the district court found that it must consider the November offer a "substantial offer of settlement" in determining attorneys' fees. *Id.* The district court concluded that any attorneys' fees accrued after November 14, 1997, "would be zero percent of the load star [sic] amount for that period, and that is what the court will award." *Id.* at 6.

Based upon this determination, the district court announced its intention to award Moriarty "reasonable . . . costs of the action" under 29 U.S.C. § 1132(g)(2)(D) for costs and attorneys' fees prior to November 14, 1997. Memorandum and Order of October, 8, 2002, at 6. The court also found that costs for "post-audit issues" were properly included in the plaintiff's costs. Interest and double interest were added to the judgment. *See* 29 U.S.C. § 1132(g)(2)(B), (C). The district court asked Moriarty to submit an amended final draft judgment in accordance with these findings.

On November 19, 2002, the district court issued an additional order. This order appears to grant Moriarty attorneys' fees at the rate of $225.00 per hour rather than $165.00 per hour. The order states that the issue of attorneys' fees was previously decided and further argument was

---

[1] This "offer" was actually an attempted acceptance. Svec was attempting to accept an offer previously made by Moriarty, which Moriarty was no longer holding open. Svec indicated a willingness to accept Moriarty's previous offer by phone on November 14, 1997, and by letter on November 17, 1997. The two dates are used interchangeably by the district court.

"barred by the law of the case." Order of November 19, 2002.

On December 4, 2002, the district court issued a judgment in favor of the plaintiff in the amount of $99,880.87. This judgment consisted of:

(A) $20,191.50 in delinquent contributions—

(i) $1,351.00 - owed by the Funeral Home to the Health and Welfare Fund for the period January 1, 1987 through June 30, 1987;

(ii) $1,038.00 - owed by the Funeral Home to the Pension Fund for the period January 1, 1987 through June 30, 1987;

(iii) $11,444.00 - owed by WSL to the Health and Welfare Fund for the period October 1, 1993 through December 31, 1995;

(iv) $6,358.50 - owed by WSL to the Pension Fund for the period [ ] October 1, 1993 through December 31, 1995.

(B) $25,814.05 in interest through October 22, 2002 on the delinquent contributions at the rate set forth in the Funds' trust agreements;

(C) $25,814.05 in double interest, as allowed pursuant to 29 U.S.C. § 1132(g)(2)(C)(ii);

(D) $10,557.02 in audit costs;

(E) $281.00 in costs for prosecuting this suit; and

(F) $17,223.25 in attorneys [sic] fees.

Order of December 4, 2002, at 2.[2]

Moriarty submitted a motion to reconsider the amount of attorneys' fees and costs under Federal Rule of Civil Procedure 59(e). Upon reconsideration, the district court again found that both the November 14, 1997, and the December 30, 1997, offers were substantial. Despite this finding, the district court chose to amend its prior order. The new district court order found:

> [T]here were two substantial offers of settlement made in late 1997. The court believes that it was somewhat inconsistent, though, in holding that the Seventh Circuit's determination that the 12/30/1997 offer was substantial foreclosed plaintiff's argument that there was no substantial offer of settlement, but then using the 11/14/1997 date to cut off attorneys fees and costs. The court is, therefore, amending its prior orders to allow attorneys fees and costs plaintiff incurred prior to 12/30/1997.

Order of February 12, 2003.

The district court entered its last order in this case on February 19, 2003. It adjusted the award of attorneys' fees in the December 4, 2002 order to reflect the change in cut-off from November 14, 1997, to December 30, 1997. As such, the attorneys' fees owed by Svec to Moriarty were increased $23,821.88 (from $17,223.25 to $41,045.13). This alteration made the final judgment against Svec $123,702.75. Amended Judgment Order of February 19, 2003.

Svec now appeals the judgment of the district court and Moriarty cross-appeals.

---

[2] The awards by the district court that are at issue in this appeal are contained in (A)(i), (A)(ii), (B), (C), (D), (E), and (F). The values of the delinquent contributions in (A)(iii) and (A)(iv) are not disputed by either Moriarty or Svec.

## II.  Discussion

### A.  Liability for Contributions to the Funds

This Court reviews a district court's decision to grant summary judgment de novo. *See Dugan v. Smerwick Sewerage Co.,* 142 F.3d 398 (7th Cir. 1998). Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Id.* In reviewing summary judgment motions, this Court construes the record in the light most favorable to the non-moving party. *Id.*

Contributions to the Funds were required for all employees of Home/WSL. Principal owners, however, were exempt from the contribution requirements. In its *Moriarty II* opinion, this Court instructed the district court to determine "what percentage of ownership is necessary before Svec is considered a principal owner under the CBA. Svec claims that ten percent ownership is sufficient, but Moriarty has an opportunity on remand to show that this figure is incorrect." *Moriarty v. Svec II*, 233 F.3d 955, 963 (7th Cir. 2000).

The remand order specifically gave Moriarty, but not Svec, leave to show that the ten percent figure was incorrect. The district court adopted ten percent as the standard for "substantial/significant" ownership, as Svec had requested at every stage of these proceedings. Svec may not now reverse course and adopt a position contrary to his posture throughout the course of litigation. The district court properly declined to consider this new argument by Svec given the clear directive of *Moriarty II*.[3] Because Svec was an employee, not a principal owner, during the period

---

[3]  The district court also evaluated the merits of Svec's claim that 3.82% ownership could qualify as "significant/substantial" under the CBA. We need not revisit this evaluation.

in dispute, we affirm the district court's holding awarding $1,351.00 in delinquent contributions to the Health and Welfare Fund for the period January 1, 1987 to June 29, 1987, and $1,038.00 in delinquent contributions owed to the Pension Fund for the period January 1, 1987 to June 29, 1987.

### B.  Attorneys' Fees

The district court awarded $41,045.13 in attorneys' fees to Moriarty based upon ERISA's mandatory fee provision. 29 U.S.C. § 1132(g)(2)(D) ("In any action under this subchapter . . . in which a judgment in favor of the plan is awarded, the court shall award the plan—*reasonable attorney's fees and costs* of the action, to be paid by the defendant[.]") (emphasis added). District courts have wide discretion to determine what constitutes reasonable attorneys' fees. We review these awards for abuse of discretion. *Moriarty v. Svec II*, 233 F.3d 955, 963 (7th Cir. 2001) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). "However, when fees are adjusted because of a principle of law our review is de novo." *Id.* (citing *Jaffee v. Redmond*, 142 F.3d 409, 412-13 (7th Cir. 1998)).

The seven orders of the district court do not provide a clear picture of why the total amount of attorneys' fees awarded is appropriate. Because several questions remain regarding the proper hourly rate and the time period covered by the attorneys' fees, we have no choice but to vacate the award and remand this issue to the district court.

In *Moriarty II*, this Court outlined the factors to be considered in determining a reasonable amount of attorneys' fees. 233 F.3d at 965-68. Although many issues that contribute to attorneys' fees are left to its sound discretion, the district court must demonstrate that it has considered the proportionality of attorneys' fees to the total damage

award, as well as the existence of substantial settlement offers. *Id.* at 968. In addition, the district court must provide an explanation of the hourly rate used, which is sufficient for this court to determine whether the district court has acted within its discretion. *Id.* at 965.

### 1. *Proportionality*

The district court did not address the proportionality of attorneys' fees. Given the extended litigation in this case, attorneys' fees may be disproportionate to the damages awarded. This Court previously offered an analysis of the importance of proportionality in an award of attorneys' fees. *See Moriarty II*, 233 F.3d at 967-68. Furthermore, this Court specifically instructed the district court to analyze proportionality in this case. As this Court stated in *Moriarty II*:

> [P]roportionality concerns are a factor in determining what a reasonable attorney's fee is. . . . [T]he district court's fee order should evidence increased reflection before awarding attorney's fees that are large multiples of the damages recovered or multiples of the damages claimed. . . . [W]e remand for such evaluation. On remand . . . the district court should consider . . . proportionality factors in exercising its discretion in fashioning a reasonable attorney's fee.

*Id.* at 968.

This Court takes no position as to whether the attorneys' fees were proportional to the amount of the award. We must require, however, that the district court analyze this issue. Because there has been no discussion of proportionality, we must again remand this issue to the district court.

*2. Hourly Rate*

The district court's rulings regarding the proper hourly rate for Moriarty's counsel are internally inconsistent. On remand, the district court's only discussion of the proper rate for attorneys' fees consists of the following two sentences: "Defendant contends that plaintiff inappropriately requests attorney's fees at the rate of $225.00 per hour rather than $165.00 per hour. This argument is barred by the law of the case." Order of November 19, 2002.

Although the meaning of this statement is somewhat vague, it appears "this" refers to the subject of the previous sentence, i.e., the defendant's contention. Therefore, a plain reading of the district court's order is that the law of the case bars Svec from arguing that Moriarty cannot request a $225.00 hourly rate, thereby sanctioning a rate of $225.00 per hour for Moriarty's counsel.

Although the district court appeared to indicate that the law of the case mandated an hourly rate of $225 and the court could not consider a rate of $165, the opposite is true. During oral argument, this Court attempted to resolve the ambiguity in the district court's order. Neither party, however, could explain what "law of the case" the district court's Order of November 19, 2002, referred to.

Previous rulings as to the proper hourly rate are no more illuminating. Neither party cited what appears to be the first statement in the record concerning this subject: a March 24, 1998 finding by the district court that rates of $225 per hour for partners and $200 per hour for associates are reasonable. This issue was next discussed on October 29, 1999, when the district court found $165 per hour to be the market rate for the legal services provided to Moriarty. This Court approved of that finding in *Moriarty II*, stating that "Given the evidence before it, the district court did not abuse its discretion in deciding that $165 is the hourly rate for Jacob, Burns work." 233 F.3d at 965.

The issue of the hourly rate for attorneys' fees thus appeared to be settled. If the district court had cited *Moriarty II* or its own previous rulings to find an hourly rate of $165, the law of the case would have barred any attempt by Moriarty to inflate the hourly rate.

Svec alleges that despite its earlier order, the district court awarded attorneys' fees at rates of $225 and $200 per hour. As this Court stated in *Moriarty II*, "The lawyer's regular rate is strongly presumed to be the market rate for his or her services." *Id.* at 965 (citing *Central States Pension Fund v. Central Cartage Co.*, 76 F.3d 114, 116-17 (7th Cir. 1996); *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993)). The market rate previously found by the district court and approved of by this Court in *Moriarty II* is $165 per hour. *Id.* Thus, the law of the case has established $165 per hour as the appropriate rate for the services of Moriarty's counsel. If the district court no longer believes this rate to be appropriate, it must provide a comprehensive explanation. We remand this issue to the district court for findings consistent with this opinion.

### 3. Substantial Offers to Settle

The district court's findings as to whether Svec made a substantial offer to settle are perplexing. On remand, the district court correctly characterized *Moriarty II* as holding the December 30, 1997 offer by Svec to be substantial. *See Moriarty v. Svec II*, 233 F.3d 955, 967 (7th Cir. 2001) ("[A]n offer is substantial if, as in this case, the offered amount appears to be roughly equal to or more than the total damages recovered by the prevailing party."). Svec's substantial offer to settle on December 30, 1997, does not preclude the possibility that other substantial offers were made, nor does it preclude that attorneys' fees may be collected after that point. The law of this case, however,

bars any claim that the December 30, 1997 offer was not substantial.[4]

In *Moriarty II*, this Court stated that "[s]ubstantial settlement offers should be considered by the district court as a factor in determining an award of reasonable attorney's fees." *Id.* The district court appears to have interpreted this language to mandate the termination of fees following a substantial settlement offer. Nevertheless, the district court did not abuse its discretion by cutting off the recovery of attorneys' fees after Svec made a substantial settlement offer. This Court cannot, however, affirm the district court's determination that the relevant substantial offer in this case was made on December 30, 1997.

In its Memorandum and Order of October 8, 2002, the district court found that Svec's December 30, 1997 offer was substantial and that an earlier offer on November 14, 1997, for a slightly larger sum of money, was also substantial. Based upon this determination, the district court found that "a reasonable attorney's fee for the period after November 14, 1997, would be zero percent of the load star [sic] amount for the period, and that is what the court will award." Memorandum and Order, October 8, 2002, at 6. This determination was logical and well founded. If an offer of $43,000 is a substantial offer, a previous offer for a larger amount must also be substantial. We affirm the district court's finding that both offers were substantial.[5]

---

[4] Moriarty's argument that Svec's December 30, 1997 offer was not substantial fails to note that the current total damages include years of additional costs and interest. As this Court found in *Moriarty II*, at the time the offer was made, it was substantial.

[5] Determinations by the district court as to whether an offer is substantial are reviewed for abuse of discretion. *See Moriarty v. Svec II*, 233 F.3d 955, 968 (7th Cir. 2001).

The district court, however, made further findings that complicated this issue. While continuing to hold that "there were two substantial offers of settlement made in late 1997," the district court stated:

> The court believes that it was somewhat inconsistent, though, in holding that the Seventh Circuit's determination that the 12/30/1997 offer was substantial foreclosed plaintiff's argument that there was no substantial offer of settlement, but then using the 11/14/1997 date to cut off attorneys [sic] fees and costs. The court is, therefore, amending its prior orders to allow attorneys [sic] fees and costs plaintiff incurred prior to 12/30/1997.

We fail to see the inconsistency found by the district court. If the December 30 offer was substantial and an offer for a greater sum was previously made, that offer is also substantial. It is inconsistent to find, as the district court did, that although a substantial offer was made on November 14, attorneys' fees should be recovered until a second substantial offer was made.

If the district court chooses to use a substantial offer as a cut-off point for the award of attorneys' fees, such a decision is within its discretion given the facts of this case. However, the district court must offer an explanation as to why it chooses to use one substantial offer as a cut-off, but not another. As such, we remand to the district court with instructions to make one of three possible findings on this issue. The district court may find: (1) the November 14, 1997 offer was substantial and is therefore the appropriate cut-off point for attorneys' fees; (2) that despite the fact that both offers were substantial, the December 30, 1997 offer was a more appropriate cut-off (this conclusion would require further explanation); or (3) now that the district court is freed from the misapprehension that no fees may be collected after a substantial offer is made, it may find that

although a substantial offer is an important factor in determining attorneys' fees, other factors lead it to conclude that Svec is liable for some portion of attorneys' fees incurred after a substantial offer was made.

Once the district court has made findings regarding proportionality, the proper hourly rate, and the issue of substantial offers, the district court should enter a new award of attorneys' fees against Svec, to replace the current award of $41,045.13.

## C. Interest, Double Interest, and Audit Costs

The district court allowed interest, double interest, and audit costs to continue to accrue after the attorneys' fees awarded to Moriarty were cut off. We affirm the district court's decision on this issue.

The exact statutory language at issue states:

> (g) Attorney's fees and costs; awards in actions involving delinquent contributions . . .
>
> (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
>
> > (A) the unpaid contributions,
> >
> > (B) interest on the unpaid contributions,
> >
> > (C) an amount equal to the greater of—
> >
> > > (i) interest on the unpaid contributions, or
> > >
> > > (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C.A. § 1132(g)(2).

### 1. Interest and Double Interest

Svec is required to pay interest and double interest on the delinquent contributions. *See* 29 U.S.C.A. §§ 1132(g)(2)(B), (C). Svec's arguments against payment rely upon a strained statutory interpretation based on *Public Citizen v. United States Department of Justice*, 491 U.S. 440, 454 (1989). In *Public Citizen*, the Supreme Court found that words of general meaning sometimes do not represent the legislature's true intent. *Id.* Svec, however, presents no evidence that the legislature did not mean what it said when it mandated interest and double interest on unpaid contributions.

Svec also claims that he should not be forced to pay the interest costs because Moriarty prolonged this litigation. The district court did not abuse its discretion in finding that Moriarty did not prolong this litigation.

While attorneys' fees and costs must be "reasonable," there is no such qualifier placed upon the award of interest and double interest. *See* 29 U.S.C.A. §§ 1132(g)(2). The "reasonable" requirement in the context of fees and costs creates a latitude for the district court that does not exist in the awarding of interest. The statutory language has clear implications in this case. In an action "involving delinquent contributions . . . the court shall award the plan . . . interest on the unpaid contributions, [and] an amount equal to the greater of interest on the unpaid contributions, or liquidated damages[.]" 29 U.S.C.A. §§ 1132(g)(2)(B), (C).

We affirm the judgment of the district court requiring Svec to pay Moriarty interest and double interest totaling $51,628.10 on the unpaid contributions.

### 2. Audit Costs

Svec also claims that the audit costs were excessive. Of the $10,557.02 in audit costs, Svec claims $3,868.75 should not be paid because "it was plaintiff's attorney's negligence in prolonging the litigation that resulted in additional audit costs." Svec presents no evidence that the district court abused its discretion by awarding these costs. Additionally, there was no factual finding by the district court to support Svec's claim that Moriarty should be denied fees or costs because of alleged "negligence." The district court correctly found that audit costs were part of the relief due to plaintiff under 29 U.S.C.A. § 1132(g)(2)(E). "Because an award of audit costs to the prevailing party is consistent with the policy of encouraging full and fair contributions, we hold that audit costs are recoverable under subsection (E)." *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1343 (9th Cir. 1988). We affirm the district court's finding that Svec must pay Moriarty $10,557.02 in audit costs.

### 3. Costs

The total costs at issue in this case are $281. Svec makes no argument that this assessment was improper. Nonetheless, Svec alleges in an argument heading that "The District Court Erred in Awarding Plaintiff . . . Costs[.]" The Court finds no basis to challenge the assessment of costs and affirms the holding of the district court.

**D.  Sanctions Against Moriarty Under 28 U.S.C. § 1927**

After his father's death on June 29, 1987, Svec was clearly the owner of Home and no longer an employee. Svec argues that any claims by Moriarty that concern his employment status after his father's death on June 29, 1987, were the result of unreasonable and vexatious litigation. The district court may impose sanctions to punish unreasonable and vexatious litigation:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case *unreasonably and vexatiously* may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (emphasis added).

We review district court decisions to grant or deny sanctions under 28 U.S.C. § 1927 for an abuse of discretion. *In re TCI Ltd.*, 769 F.2d 441, 448 (7th Cir. 1985). Svec claims he "incurred $95,406.50 in attorneys fees and $7,917.93 in costs from 1996 through September 20, 1999 in defending against plaintiff's unmeritorious claim." The district court found that Moriarty's counsel acted negligently and unreasonably by failing to obtain the probate file for Elmer Svec's estate; however, the district court did not find this behavior "vexatious." The district court went on to find that 28 U.S.C. § 1927 requires both unreasonable *and* vexatious behavior.

We affirm the district court's decision to deny Svec sanctions based upon the behavior of Moriarty's counsel. Svec cites many cases in which attorneys who acted unreasonably and vexatiously were sanctioned. He fails, however, to establish that the conduct in this case was vexatious.

Sanctions may only be awarded under 28 U.S.C. § 1927 against an individual who has demonstrated "subjective or

objective bad faith." *Pac. Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113,120 (7th Cir. 1994) (citing *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184 (7th Cir. 1992)). Svec's allegation that Moriarty's attorney knew of the "principal owner rule" and still pursued claims against Svec for post-July 1, 1987 contributions fails to meet the high burden required to overturn the district court's findings. Although Svec alleges that Moriarty's counsel knew he was the owner following his father's death, the district court found no action by Moriarty's counsel so egregious as to warrant sanctions under 28 U.S.C. § 1927. We affirm the district court's decision to withhold sanctions, while sharing the district court's concern regarding the actions of Moriarty's counsel.

Although Svec reargues every allegation against Moriarty and Moriarty's counsel, he fails to illustrate how the district court's decision not to grant sanctions is an abuse of discretion. In short, the district court's holding that the actions by Moriarty's counsel do not support sanctions under 28 U.S.C. § 1927 was not an abuse of discretion.

In a footnote, Svec expands his claim for attorneys' fees under 28 U.S.C. § 1927 to include the plaintiff as well as the plaintiff's lawyers. A footnote does not preserve an issue for review. *See To-Am Equipment Co., Inc. v. Mitsubishi Caterpillar Forklift Am., Inc.*, 152 F.3d 658, 663 (7th Cir. 1998). Therefore, this Court has not examined any claims against Moriarty under 28 U.S.C. § 1927.

**E.   Jurisdiction of the District Court to Hear Moriarty's Claims**

Svec asks this Court to reconsider its decision in *Moriarty I* that the terms of the collective bargaining agreement covered WSL employees. Although the NLRB found that Teamsters Local 727 did not represent WSL's employees, this Court found the question of representation irrelevant.

"Once the court found that WSL and the Funeral Home were a single employer, and that WSL employees performed livery services, it could impose liability 'in accordance with the terms and conditions of [the] . . . agreement.'" *Moriarty v. Svec I,* 164 F.3d 323, 334 (7th Cir. 1998) (quoting 29 U.S.C. § 1145).

This Court will not revisit an issue it resolved seven years ago. Law of the case doctrine advises against a court reopening previously decided issues. *Messinger v. Anderson*, 225 U.S. 436, 444 (1912). This Court will only reexamine an earlier decision if it is "convinced that [decision] is clearly erroneous and would work a manifest injustice." *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983). The jurisdictional decision in *Moriarty I* was correct, and we reaffirm that holding today.

## III. Conclusion

For the reasons stated herein, we AFFIRM the district court's holding that Svec was an employee subject to the collective bargaining agreement from January 1, 1987 to June 29, 1987; we VACATE the district court's award of attorneys' fees and REMAND to the district court for a determination of the proper amount of attorneys' fees; we AFFIRM the district court's award of interest, double interest, and audit costs; we AFFIRM the district court's denial of sanctions against Moriarty's counsel; and we AFFIRM the district court's assertion of jurisdiction to hear Moriarty's claims.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*