In the

# United States Court of Appeals
## For the Seventh Circuit

————————

Nos. 05-3209, 05-3538, 05-3539

STARCON INTERNATIONAL, INC.,

*Petitioner/Cross-Respondent*,

and

INTERNATIONAL BROTHERHOOD OF
   BOILERMAKERS, IRON SHIP BUILDERS,
   BLACKSMITHS, FORGERS AND
   HELPERS, AFL-CIO,

*Petitioner*,

*v.*

NATIONAL LABOR RELATIONS BOARD,

*Respondent/Cross-Applicant.*

————————

On Petitions for Review and Cross-Application
for Enforcement of an Order of
the National Labor Relations Board.
No. 13-CA-32719

————————

SUBMITTED JANUARY 30, 2006—DECIDED JUNE 7, 2006

————————

Before FLAUM, *Chief Judge*, and POSNER and MANION,
*Circuit Judges*.

POSNER, *Circuit Judge*.  In a previous round, we held that
the National Labor Relations Board may not order an

employer who has rejected job applicants because of their union affiliation to offer them jobs and give them backpay without first determining which if any of them would actually have been hired had it not been for the employer's anti-union animus. *Starcon, Inc. v. NLRB*, 176 F.3d 948, 951-52 (7th Cir. 1999). The significance of requiring such a determination in this case lay in the fact that the applicants were "salts." That is, they were union organizers whose motive in applying for jobs with Starcon was, by advertising their intention to organize the employer's workforce, to precipitate an unfair labor practice by the employer (refusing to hire them because of their revealed, indeed flaunted, intentions). Obviously there would be a legitimate question how many if any of them would have accepted a job had it been offered to them, and only those would be entitled to any relief. So while we upheld the Board's order insofar as it commanded Starcon to cease and desist from discriminating against union supporters, we vacated the part of the order that granted relief to the individual salts who had applied and been turned down for jobs.

On remand the Board determined that only two of the more than 100 salts who had applied to Starcon would have been hired had it not been for the company's antipathy to union organizers. Those were the two who testified that if offered a job they would have taken it. The other salts, who did not testify, would probably have turned down a job offer by Starcon since the purpose of the salt strategy is not to furnish workers for the nonunion employer but to get him into trouble if and when, as expected and indeed hoped, he turns down the salts who have applied for jobs. So the Board ordered relief only for the two employees who had testified that they would have accepted a job offer from Starcon.

The union challenges the limited scope of the order on the ground that the General Counsel of the Board, who prosecutes unfair labor practice cases, should not have to prove that salts who were qualified would have accepted a job offer, though the union would let the employer try to prove that they would not have accepted an offer. The Board has never decided who has the burden of proof in such a case, but in the remand proceeding in the present case it interpreted our decision as resolving the issue against the union. For we had said that "if the Board wants to order relief to particular 'salters,' it has, at a minimum, to determine how many of them Starcon would have hired had it not been actuated by hostility to unionization." 176 F.3d at 951-52. Not "would have offered a job to," but "would have hired."

The doctrine of law of the case precludes reexamining a previous ruling (unless by a higher court) in the same case unless it was manifestly erroneous. *Arizona v. California*, 460 U.S. 605, 618 n. 8 (1983); *Moriarty v. Svec*, 429 F.3d 710, 722-23 (7th Cir. 2005); *Vidimos, Inc. v. Wysong Laser Co.*, 179 F.3d 1063, 1065-66 (7th Cir. 1999). That the union has not shown. Indeed, we think the passage we just quoted from our previous opinion is correct—a worker cannot get relief predicated on his being denied a job if he would have spurned the job had it been offered to him. But the issue is a novel one to which the National Labor Relations Act does not speak, and should the Board in some future case adopt a view contrary to ours it would be entitled to our respectful consideration. But quite apart from the obstacle to reconsideration erected by the doctrine of law of the case, the union has given us no reason to think the Board *would* adopt a contrary view. The National Labor Relations Act is not a penal statute, and windfall remedies—remedies that give the victim of the defendant's wrongdoing a benefit he would not have obtained had the defendant not committed

any wrong—are penal. Suppose a salt would have spurned the employer's job offer had it been made, yet the General Counsel seeks backpay for him. If the backpay is awarded, the salt will get money that he would not have gotten had the employer rather than violating the Act offered him a job.

The burden of proving an entitlement to relief is usually placed on the person seeking the relief, and we are given no reason for departing from that presumption in salting cases, especially since the departure would place on the employer the burden of proving a negative. *Siebert v. Severino*, 256 F.3d 648, 656 n. 4 (7th Cir. 2001); *National Communications Ass'n v. AT & T Corp.*, 238 F.3d 124, 131 (2d Cir. 2001). It is easier for each employee to produce evidence of what he would have done had he been offered a job than for the employer to produce evidence of what each of the employees would not have done. See *Campbell v. United States*, 365 U.S. 85, 96 (1961); *United States v. New York, New Haven & Hartford R.R.*, 355 U.S. 253, 256 n. 5 (1957).

Not only the union but also Starcon is complaining about the Board's new order. Starcon complains in two respects both involving the Board's decision to postpone certain issues to the compliance stage of this unfair labor act proceeding. The first is the Board's decision to make the relief for one of the two employees conditional on his passing the employer's test for his job specialty as a welder, as he was not qualified for any other job. Starcon points out that a worker's present ability to pass a welding test is not conclusive proof that he could have passed it earlier when he was turned down for the job. The second postponed issue is how long the two employees would have been employed had it not been for the employer's hostility to the union. That affects not only the amount of backpay to which they are entitled but also whether they are entitled now to be

hired by Starcon. Starcon argues that they would have been laid off at the completion of the construction project for which they would have been hired had they not revealed themselves to be salts, and if this is right they are entitled only to backpay, and not to a job.

There was no error in the Board's deciding to reserve these matters for compliance proceedings. There is a difference between entitlement to relief and the amount of relief to which one is entitled. Our first decision upheld the entry of a cease and desist order against Starcon's discriminating against salts. The Board has since determined correctly that the two employees who would have accepted a job offer from Starcon had they received one are entitled to some equitable relief. The open issue is merely the precise amount of that relief, and specifically whether it includes not merely backpay for both employees but also a job for one or both; and how much backpay. Remedial proceedings in an equity case often take place in stages: an injunction is issued, but what constitutes compliance with the injunction is deferred. *People Who Care v. Rockford Board of Education*, 171 F.3d 1083, 1086 (7th Cir. 1999); *Gautreaux v. Chicago Housing Authority*, 690 F.2d 601, 609-10 (7th Cir. 1982). The staged approach is sensible because usually once the injunction is entered and upheld, the parties can work out the details of compliance without further judicial intervention. For the application of this principle to cases before the Labor Board, see *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 902 (1984); *Ron Tirapelli Ford, Inc. v. NLRB*, 987 F.2d 433, 444 (7th Cir. 1993).

The petitions for review are denied, and the Board's order will be enforced.

A true Copy:

      Teste:

                         _____

                         *Clerk of the United States Court of*
                           *Appeals for the Seventh Circuit*