142 F.3d 409
 Carrie JAFFEE, as Special Administrator for Ricky Allen,
Sr., Plaintiff-Appellant,
v.
Marylu REDMOND, Hoffman Estates Police Officer, and Village
of Hoffman Estates, Illinois, Defendants-Appellees.
 No. 97-2447.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 2, 1997.
Decided April 20, 1998.
 
 Kenneth N. Flaxman, Ronald L. Futterman, Craig B. Futterman (argued), Futterman & Howard, Chicago, IL, for Plaintiff-Appellant.
 Gregory E. Rogus, Paul E. Wojcicki (argued), Segal, McCambridge, Singer & Mahoney, Chicago, IL, for Defendants-Appellees.
 Before WOOD, Jr., COFFEY, and FLAUM, Circuit Judges.
 FLAUM, Circuit Judge.
 
 
 1
 This is a sequel to our opinion in Jaffee v. Redmond, 51 F.3d 1346 (7th Cir.1995)(Jaffee I). In Jaffee I we overturned a jury's verdict in favor of the plaintiff on her constitutional and Illinois Wrongful Death Act claims. See id. at 1357-58. We held that the district court had erroneously permitted the plaintiff to introduce evidence of communications between the individual defendant and a social worker in support of her constitutional claim; the Supreme Court affirmed our decision and resolved a split among the circuits by recognizing a federal evidentiary privilege for confidential communications between licensed psychotherapists and their patients. See Jaffee v. Redmond, 518 U.S. 1, 15-17, 116 S.Ct. 1923, 1931, 135 L.Ed.2d 337 (1996). Following remand the case was again tried to a jury, which found for the plaintiff on her constitutional claim and awarded her money damages under 42 U.S.C. § 1983.
 
 
 2
 In considering Jaffee's petition for attorney's fees under 42 U.S.C. § 1988, the district court found that it was reasonable for Jaffee to have argued against the evidentiary privilege at her first trial, which at the time was a question of first impression in this Circuit. The court concluded, however, that it would not award Jaffee the fees that she had incurred by arguing the privilege question in this Court and in the Supreme Court, for this argument did not "contribute to" her ultimate success. The court also denied Jaffee all fees incurred for the second trial because the retrial was necessitated by her ultimately incorrect argument against the privilege at the first trial. Jaffee challenges the district court's denial of fees and associated costs. We reverse and remand.
 
 I. Background
 
 3
 The underlying facts of this case are set out fully in Jaffee I. See 51 F.3d at 1348-52. We discuss them here only to the extent that they are relevant to the issues presented by this appeal. Carrie Jaffee is the administrator of the estate of her son, Ricky Allen, Sr. Appellee Marylu Redmond shot and killed Allen while she was on patrol as a police officer for the Village of Hoffman Estates. Jaffee brought suit in federal court on behalf of her son's estate, alleging that Redmond had violated Allen's constitutional rights and seeking damages under both § 1983 and the Illinois Wrongful Death Act.
 
 
 4
 In the course of pretrial discovery Jaffee learned that, following the shooting, Redmond had participated in counseling sessions with a licensed clinical social worker; Jaffee sought access to the social worker's notes for use at trial in support of her § 1983 claim. The defendants resisted discovery of the notes, arguing that Redmond's conversations with the social worker were protected against involuntary disclosure by a federal psychotherapist-patient privilege. This Circuit had not addressed the issue in any prior cases, and Judge Milton Shadur, presiding over the first trial, refused to recognize such a privilege. Despite the district court's order to disclose the notes, the defendants refused to comply. At the close of trial, the district court told the jury that the defendants had no legal justification for refusing to turn over the notes and instructed the jury that it could presume that the notes' contents were not favorable to the defendants. The jury awarded Jaffee $45,000 on her federal claim and $500,000 on her state-law claim. See id. at 1350-52.
 
 
 5
 The defendants raised two arguments on appeal. We rejected their first argument, which claimed that the district court erred in instructing the jury on the use of deadly force by a police officer. See id. at 1352-54. However, we found merit in their second argument, holding that the district court erred in not recognizing a privilege under Rule 501 of the Federal Rules of Evidence for confidential communications between a licensed psychotherapist and a patient. See id. at 1354-58. In recognizing the psychotherapist-patient privilege, we joined the position already adopted by two circuits and opposed by four others. Because the district court's erroneous instructions to the jury regarding the privilege issue prejudiced the defendants, we reversed the district court's judgment and remanded the case for a new trial. Hoping to resurrect her favorable jury verdict, Jaffee petitioned the Supreme Court for certiorari. The Court granted the petition, see 516 U.S. 930, 116 S.Ct. 334 (1995), and following oral argument, the Court affirmed our holding in favor of the privilege. See 518 U.S. at 17-19, 116 S.Ct. at 1932.
 
 
 6
 The case was then remanded for a new trial before Judge Harry Leinenweber. At the second trial, Jaffee sought $100,000 in damages on her § 1983 claim and $2,000,000 in damages on her state-law wrongful death claim. Jaffee again prevailed on her civil rights claim; the jury awarded her the full $100,000. Unlike in the first trial, however, the jury this time found for the defendants on Jaffee's state-law claim.
 
 
 7
 Jaffee petitioned the district court for attorney's fees and expenses as a prevailing party under 42 U.S.C. § 1988. The total amount requested was $911,928.47--the sum of the fees and costs incurred for the first trial, the original appeal in this Court, the proceedings in the Supreme Court, the second trial, and the preparation of the fee petition in the district court. Responding to the defendants' motion that the fees and costs incurred in arguing the privilege issue should not be awarded, Judge Leinenweber found that "it was certainly reasonable for plaintiffs to pursue the privilege issue." After all, this Circuit had not yet resolved the issue and the circuits that had addressed it were divided. The court therefore found it appropriate to award fees to Jaffee for the time spent arguing against the privilege at the first trial. This brought the total awarded to Jaffee for the first trial to $272,259 in fees and $18,973 in costs.
 
 
 8
 Judge Leinenweber took a different view of Jaffee's request for fees incurred in arguing the privilege issue on appeal. Noting that the defendants ultimately prevailed on the issue, the court reasoned that "[t]he privilege battles ... did not assist plaintiffs in their ultimate victory" at the second trial. Because "plaintiffs' argument against a privilege did not contribute at all to their success", the court denied Jaffee the fees incurred in arguing against the privilege both in this Court and in the Supreme Court. The court therefore awarded Jaffee one-half of the fees and expenses incurred in Jaffee I; this compensated her for the time spent on the deadly force jury instruction issue, which was the defendants' other argument raised in Jaffee I. This amounted to $42,942.64 in fees and $257.64 in costs. Furthermore, because only the psychotherapist privilege issue was before the Supreme Court, Judge Leinenweber did not award any fees related to the Supreme Court proceedings. Moreover, the court refused to award any fees for work on the second trial, reasoning that "that trial was necessitated by plaintiffs having incorrectly argued against a privilege at the first trial." Finally, Judge Leinenweber found reasonable Jaffee's request for fees and costs for preparing the fee petition; he awarded $31,622.95 in fees and $178.14 in costs.
 
 
 9
 All told, the district court awarded Jaffee $446,406.73 in fees and $19,409.10 in costs. The total fees disallowed by the court amounted to $446,112.64 plus costs. Jaffee now appeals the district court's denial of these fees and costs.
 
 II. Analysis
 A. Standard of Review
 
 10
 We generally review a district court's award of attorney's fees pursuant to § 1988 for an abuse of discretion. See, e.g., Briggs v. Marshall, 93 F.3d 355, 361 (7th Cir.1996); Spellan v. Board of Educ., 59 F.3d 642, 645 (7th Cir.1995). As the Supreme Court has explained, this deferential standard of review "is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). When a district court exercises its discretion to deny fees as a result of its subjectively superior understanding of the litigation, we routinely affirm the decision of the district court. See, e.g., Merriweather v. Family Dollar Stores, 103 F.3d 576, 582-84 (7th Cir.1996); Estate of Borst v. O'Brien, 979 F.2d 511, 515-17 (7th Cir.1992); Tomazzoli v. Sheedy, 804 F.2d 93, 97-99 (7th Cir.1986) (per curiam).
 
 
 11
 However, when a district court denies attorney's fees to a prevailing party under § 1988 as a result of applying a principle of law, the justifications for the generally deferential standard of review are absent. Therefore, as with all questions of law, we review de novo the alleged legal errors made by the district court in denying fees. See, e.g, Zagorski v. Midwest Billing Servs., Inc., 128 F.3d 1164, 1166 (7th Cir.1997) (per curiam); Spanish Action Comm. v. City of Chicago, 811 F.2d 1129, 1134 (7th Cir.1987); see also Cabrales v. County of Los Angeles, 935 F.2d 1050, 1052 (9th Cir.1991) ("While awards of attorney's fees pursuant to 42 U.S.C. § 1988 are generally reviewed for abuse of discretion, any elements of legal analysis and statutory interpretation which figure in the district court's decision are reviewable de novo.") (citation and internal quotation omitted). In this case, the district court denied fees solely by applying rules of law: The court concluded that fees incurred on, or as a result of, an unsuccessful evidentiary argument are not compensable because the argument did not contribute to a successful claim. We therefore review the district court's award of fees de novo.
 
 B. Discussion
 
 12
 In cases brought under § 1983, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). The appellees do not dispute Jaffee's status as a "prevailing party" for the purposes of § 1988. Because Jaffee's attorneys are entitled to fees, the only issue is the reasonableness of the fees to be awarded. See, e.g., Spellan v. Board of Educ., 59 F.3d 642, 645 (7th Cir.1995). The appellees argue that both Jaffee's partial victory (due to her losing state-law claim) and the considerable fees incurred in arguing against the psychotherapist privilege indicate the reasonableness of the district court's award. These arguments rely on the general discretion vested in the district courts to award reasonable fees. As we have already indicated, however, the district court did not deny fees to Jaffee in its discretion; rather, it did so as a matter of law. The court denied fees to Jaffee by determining that time spent on or necessitated by an unsuccessful evidentiary argument made in support of an ultimately successful claim is not compensable. This is not an appropriate justification for denying fees; it conflicts with Supreme Court and Circuit precedent and, additionally, creates incentives that are in tension with the tenets of professional responsibility.
 
 
 13
 1. Attorney's Fees for Unsuccessful Arguments
 
 
 14
 In Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court set forth the legal principles governing the determination of attorney's fee awards under § 1988. Initially, the court must determine a "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. Id. at 433, 103 S.Ct. at 1939. The court may then reduce or augment the lodestar amount by considering twelve other factors, see id. at 430 n. 3, 103 S.Ct. at 1938 n. 3, commonly known as the Hensley factors. The most important of these factors is the "results obtained"; this factor becomes particularly significant in cases where a technically prevailing party succeeds on only some of his claims for relief. See id. at 434, 103 S.Ct. at 1939-40; see also Farrar v. Hobby, 506 U.S. 103, 114-16, 113 S.Ct. 566, 574-76, 121 L.Ed.2d 494 (1992) (recognizing that when a prevailing party "recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all") (citation omitted).
 
 
 15
 The Hensley Court considered the "results obtained" question in the context of determining whether a district court could award fees to a prevailing party for time spent on claims that proved unsuccessful. Id. at 426, 103 S.Ct. at 1935-36. The Court recognized that a prevailing plaintiff was not entitled to fees for time expended pursuing unsuccessful claims that were unrelated to those claims on which the plaintiff ultimately prevailed. Id. at 434-35, 103 S.Ct. at 1939-40 ("[U]nrelated claims [must] be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim."). However, Hensley makes clear that when claims are interrelated, as is often the case in civil rights litigation, time spent pursuing an unsuccessful claim may be compensable if it also contributed to the success of other claims. Id. at 435, 103 S.Ct. at 1940. In such cases, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id.
 
 
 16
 In the context of partial recovery cases, we have interpreted Hensley to permit attorney's fees for unsuccessful claims when those claims involved a common core of facts or related legal theories. See, e.g., Spanish Action Comm. v. City of Chicago, 811 F.2d 1129, 1133 (7th Cir.1987). For example, we have affirmed a district court's award of fees for time spent pursuing an unsuccessful employment discrimination claim, brought in tandem with a successful retaliation claim, because "the court found that the successful claim for retaliatory discharge could not have been tried effectively without reviewing and analyzing the facts that led to the underlying discrimination charge." Merriweather v. Family Dollar Stores, 103 F.3d 576, 584 (7th Cir.1996). Hensley's rejection of "the mechanical claim-chopping approach", see Lenard v. Argento, 808 F.2d 1242, 1245 (7th Cir.1987), has led us to an approach that is more in tune with the realities of litigation, in which we focus on the overall success of the plaintiff rather than the success or failure of each of the plaintiff's causes of action:
 
 
 17
 For tactical reasons and out of caution lawyers often try to state their client's claim in a number of different ways, some of which may fall by the wayside as the litigation proceeds. The lawyer has no right to advance a theory that is completely groundless or has no factual basis, but if he presents a congeries of theories each legally and factually plausible, he is not to be penalized just because some, or even all but one, are rejected, provided that the one or ones that succeed give him all that he reasonably could have asked for.
 
 
 18
 Id. at 1245-46.
 
 
 19
 We have analogized from Hensley's approach concerning related claims to losing arguments in support of successful claims. In Kurowski v. Krajewski, 848 F.2d 767, 776 (7th Cir.), cert. denied, 488 U.S. 926, 109 S.Ct. 309, 102 L.Ed.2d 328 (1988), we addressed the defendant's contention that unproductive legal research in support of a fully successful claim was not compensable under § 1988. We rejected that argument, even though some of the legal research never made its way to trial, because Hensley "says that the court should subtract time for losing claims, but a losing argument in support of a successful claim for relief is fully compensable time." Id.; see also Pressley v. Haeger, 977 F.2d 295, 298 (7th Cir.1992) ("Hensley permits the court to award fees for losing arguments in support of prevailing claims, but not for losing claims."). Accordingly, just as Hensley dictates that fees incurred on unsuccessful but related claims may be compensable, we have recognized that courts may award fees for time reasonably spent on an unsuccessful argument in support of a successful claim. As we noted in People Who Care v. Rockford Board of Education, 90 F.3d 1307, 1314 (7th Cir.1996), the touchstone in such a case is not whether a particular argument was successful, but rather whether it was reasonable. See also Cabrales v. County of Los Angeles, 935 F.2d 1050, 1053 (9th Cir.1991) ("If a plaintiff ultimately wins on a particular claim, she is entitled to all attorney's fees reasonably expended in pursuing that claim-even though she may have suffered some adverse rulings.").
 
 
 20
 Applying these principles to the instant case, we conclude that the district court erred in denying Jaffee all fees incurred in arguing against the psychotherapist privilege solely because that argument did not "contribute to" her ultimately successful claim. As we have explained, an unsuccessful but reasonable argument in support of a successful claim may be compensable. Jaffee attempted to introduce evidence of Redmond's conversations with a social worker in order to establish the "objective unreasonableness" of Redmond's actions, which is the standard of liability for Jaffee's § 1983 claim. Two trials and two appeals later, Jaffee prevailed on her § 1983 claim; the adverse rulings that she suffered along the way were merely temporary setbacks on her way to victory. See id. That these setbacks did not contribute to Jaffee's ultimate success is not completely determinative; what is critical is whether the argument, and the extent to which Jaffee pursued it, was reasonable.
 
 
 21
 The district court has already found that it was reasonable, as a general matter, for Jaffee to argue against the evidentiary privilege; absent such a finding, the court could not have awarded fees to Jaffee for arguing against the privilege at the first trial itself. What remains for the district court to determine on remand is whether all of the fees incurred in support of this generally reasonable argument were themselves reasonably incurred. While we conclude under Hensley that the court must consider awarding fees for the pursuit of this argument, the reasonableness of particular fees is a determination that remains within the discretion of the experienced district court judge. See, e.g., Zagorski v. Midwest Billing Servs., 128 F.3d 1164, 1167 (7th Cir.1997) ("Of course, the trial court, who enjoy[s] a decided advantage over appellate courts in calculating fee awards, retains a great deal of discretion in fixing the amount of the final award.") (per curiam) (alteration in original) (internal quotation and citation omitted).
 
 
 22
 The appellees seek to avoid application of the above principles and make two arguments in support of the district court's fee award. First, they emphasize the magnitude of the fees generated by Jaffee's attorneys in arguing against the psychotherapist privilege. According to the appellees, Jaffee's attorneys incurred over $331,000 in fees arguing against the privilege; this was a major component of the over $900,000 in fees that Jaffee requested, and it dwarfed the $100,000 damage award that she received. Pointing out the fact-specific nature of attorney's fees determinations, see Hensley, 461 U.S. at 429, 103 S.Ct. at 1937 ("The amount of the fee, of course, must be determined on the facts of each case."), they hope to distinguish Kurowski, in which the fees incurred on unsuccessful arguments amounted to "a few hours' research" and the fee request "was modest as requests go in civil rights litigation." Kurowski, 848 F.2d at 776.
 
 
 23
 We do not believe that factual distinctions between this case and Kurowski alter our legal determination that "a losing argument in support of a successful claim for relief is fully compensable time." Id. Ten hours of unsuccessful research may not be compensable in one case, whereas 100 hours may be compensable in another. The key is whether those hours, in the judgment of the district court, were reasonably spent in the context of the entire litigation:
 
 
 24
 Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.
 
 
 25
 Hensley, 461 U.S. at 434, 103 S.Ct. at 1939-40. The fact that Jaffee's lawyers may have waged an "all-out war" in arguing against the privilege does not, in and of itself, distinguish this case from Kurowski. In each case, if the fees incurred in support of the unsuccessful argument were reasonable, the district court may make an appropriate award. On remand, the district court may well find that some of the fees incurred in arguing against the privilege were unreasonable, that Jaffee's attorneys spent more time on the issue than was warranted. This is very different, however, from a decision that all such fees must be categorically denied because they were incurred in support of a losing argument.
 
 
 26
 The appellees' second argument in this context points to our language in Pressley, where we stated that "Hensley permits the court to award fees for losing arguments in support of prevailing claims." 977 F.2d at 298. While they concede that this language would support an award of fees for a losing argument, the appellees cling to our use of the word "permits" to argue that the district court, in its discretion, can refuse to award fees in such circumstances. This argument misapprehends the nature of the discretion afforded the district court. A district court can deny fees in such circumstances if it determines that the amount of fees, or a portion of that amount, was not reasonably incurred. Such a decision would be a reasonable exercise of the court's discretion, in light of its superior understanding of the litigation and the facts of the case. However, as we have indicated, the district court in this case did not engage in an exercise of discretion; rather, it denied fees for the privilege battles due to a mistaken legal conclusion. Accordingly, we reject this argument.[1]
 
 2. Fees for the Second Trial
 
 27
 The district court rejected Jaffee's request for fees for the second trial "because that trial was necessitated by plaintiffs having incorrectly argued against a privilege at the first trial."[2] Jaffee claims that this is not an appropriate justification for denying fees, and the appellees point to no other cases that adopt such a rationale. A prevailing party is entitled under § 1988 to "an award of fees for all time reasonably expended in pursuit of the ultimate result achieved." Hensley, 461 U.S. at 431, 103 S.Ct. at 1938 (quoting Davis v. County of Los Angeles, 8 Empl. Prac. Dec. (CCH) p 9444 (C.D.Cal.1974)). While an unreasonable argument that necessitates further proceedings may justify denying compensation for those proceedings, the district court in this case found that Jaffee acted reasonably in arguing against the privilege. Jaffee attained her status as a prevailing party by virtue of her attorneys' work in the second trial. In determining the extent to which such time is compensable, a fee award is not automatically precluded because the second trial was "necessitated by" a reasonable but unsuccessful argument. What must be addressed, in considering this litigation in its entirety, is "whether the expenditure of counsel's time was reasonable in relation to the success achieved." Hensley, 461 U.S. at 436, 103 S.Ct. at 1941. We therefore remand for further proceedings on this question.
 
 
 28
 3. Professional Responsibility Considerations
 
 
 29
 We have recognized previously that § 1988's "overriding goal was to reimburse with a reasonable attorneys' fee those who as 'private attorneys general' take it upon themselves to invoke and thereby invigorate federal constitutional and statutory rights." Charles v. Daley, 846 F.2d 1057, 1063 (7th Cir.1988), cert. denied, 492 U.S. 905, 109 S.Ct. 3214, 106 L.Ed.2d 564 (1989). If arguments that do not contribute to a plaintiff's ultimate success were not eligible for compensation for that reason alone, then attorneys might be discouraged from raising novel but reasonable arguments in support of their clients' claims and a disincentive for strong advocacy could result. The ethics of the legal profession counsel an opposite approach. See MODEL RULES OF PROFESSIONAL CONDUCT Rule 1.3 cmt. 1 (1983) ("A lawyer should act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf."). "A lawyer who figures out the likeliest outcome in his favor, and aims only for that, is likely to fall short. The good lawyer aims higher, and is not improvident to do so." Partington v. Broyhill Furniture Indus., 999 F.2d 269, 273-74 (7th Cir.1993); see also Uniroyal Goodrich Tire Co. v. Mutual Trading Corp., 63 F.3d 516, 526 (7th Cir.1995) ("Were we to deem unreasonable the reimbursement of fees incurred for [work on unsuccessful motions], we would be discouraging the type of representation attorneys are duty-bound to provide. So as long as statutes allow prevailing parties to recover attorneys' fees 'reasonable' in amount, we are not prepared to link our definition of 'reasonable' to whether the fees are incurred in pursuit of a successful task."), cert. denied, 516 U.S. 1115, 116 S.Ct. 916, 133 L.Ed.2d 846 (1996).
 
 
 30
 Section 1988 does not purport to compensate attorneys for all reasonable work. "Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill." Hensley, 461 U.S. at 436, 103 S.Ct. at 1940. However, when plaintiffs attain success, courts should not decline to award fees to the plaintiffs' attorneys solely because certain zealous advocacy that was appropriately provided their clients did not contribute directly to that success. This approach would be at odds with the norms of professional responsibility.
 
 III. Conclusion
 
 31
 The district court has already determined that it was generally reasonable for Jaffee to argue against the psychotherapist privilege; on remand it should apply the traditional criteria elucidated in Hensley and subsequent cases to make its determination of reasonable fees and costs. Exercising its discretion as discussed above, the court should determine the appropriateness of fees for Jaffee's attorneys for their work in Jaffee I, in the Supreme Court, in the second trial, for their work on the instant appeal, and in preparing a new fee petition.[3] None of the parties has challenged the district court's fee determinations for the first trial, the portion of Jaffee I not related to arguing against the psychotherapist privilege, and the first fee petition. We therefore let stand that part of the district court's judgment. We reverse the remainder of the district court's judgment denying additional fees, and we remand for further proceedings consistent with this opinion.
 
 
 
 [1]
 Jaffee raises a second argument that, she asserts, indicates that she is entitled to reasonable fees for the appellate work undertaken in support of her initial trial victory. Previously, we have noted that "when the defendant appeals and the plaintiff incurs expenses in defending against the appeal that are reasonable even though they are not crowned by complete success, ordinarily he should be entitled to reimbursement of those fees; he had no choice but to incur them or forfeit his victory in the district court." Ustrak v. Fairman, 851 F.2d 983, 990 (7th Cir.1988); see also Jackson v. Illinois Prisoner Review Bd., 856 F.2d 890, 896 (7th Cir.1988). Jaffee relies on Ustrak to argue that her attorneys' work on Jaffee I is fully compensable. Furthermore, she argues that the fees incurred for the Supreme Court argument are similarly compensable. Although Jaffee no longer had a successful verdict to preserve, her only opportunity to restore the verdict was to petition the Supreme Court for certiorari. In this context she relies on our recognition that: "A court's focus should not be limited to the success/failure of each of the attorney's actions. Rather, it should be upon whether those actions were reasonable. In other words, the court should not look to whether [the plaintiffs' attorneys] 'won' [a prior] appeal, but should instead look to whether the fees [they] request[ ] for that appeal were reasonably incurred." People Who Care, 90 F.3d at 1314. The reasonableness of the decision to appeal, we made clear, must be determined by considering the decision "at the time it was made" and not in hindsight. Id
 This argument presents a persuasive alternative ground for reversing the decision of the district court. We do not rely on it, however, because it does not directly confront the district court's holding that losing issues that do not "contribute" to a successful claim are not compensable. Neither argument establishes an absolute entitlement to fees incurred arguing against the privilege; instead, both recognize that the court should only award fees that are reasonably incurred. In this context, the district court's finding that "it was certainly reasonable for plaintiffs to pursue the privilege issue" indicates that Jaffee's decision to petition the Supreme Court for review was similarly reasonable "at the time it was made."
 
 
 [2]
 In the district court, the appellees' only objection to fees for the second trial was that Jaffee's attorneys had spent excessive time preparing for and participating in the retrial. A district court is certainly empowered to reduce a fee request sua sponte, and indeed it "has an independent obligation to scrutinize the legitimacy of such a submission." Spellan v. Board of Educ., 59 F.3d 642, 646 (7th Cir.1995). However, when a court raises independent concerns about a fee petition, we have recognized that the court should afford the plaintiffs an opportunity to address its concerns. See id. Jaffee argues that we should vacate the district court's denial of fees for the second trial because she was not afforded this opportunity. We could do so; Jaffee could then brief the issue for the district court. For the sake of expediency, however, we shall address the merits of the court's decision
 
 
 [3]
 In this context, we note that the parties dispute whether Jaffee achieved "complete success" or "excellent results" in the second trial. This dispute among the parties centers on the fact that while the jury awarded Jaffee all of the damages that she sought on her § 1983 claim, it found for the defendants on her state-law claim. The dispute is significant given the Hensley Court's recognition that "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." 461 U.S. at 440, 103 S.Ct. at 1943. Whether the claims are so related that fees should not be denied on this ground is for the district court to determine, given its superior understanding of the litigation
 However, even if the district court determines that the two claims are interrelated, the fact that Jaffee received the full amount sought under § 1983 is not dispositive. We do not believe that the district court should consider Jaffee's unsuccessful state-law claim in determining the extent of her success for the purposes of § 1988. Section 1988 does not entitle prevailing plaintiffs to fees for successfully litigating unrelated pendent state-law claims. See Hibma v. Odegaard, 769 F.2d 1147, 1158 (7th Cir.1985). Thus, when a prevailing plaintiff loses a pendent state-law claim, that fact is not indicative of limited or partial success by the plaintiff on his federal claims. Instead, the district court should determine whether Jaffee reasonably could have asked for more on her federal claim: "Where the plaintiff fails to obtain all that he reasonably could have asked for and achieves only partial or limited success, the lodestar amount ... is likely to be excessive." Spanish Action Comm., 811 F.2d at 1133; see also Lenard v. Argento, 808 F.2d 1242, 1248 (7th Cir.1987) (recognizing that the district court should determine "whether the time put in by [the plaintiff's] lawyers was reasonable in light of the success (intangible as well as tangible) obtained"). The seeming disproportion between the fees sought by Jaffee's attorneys and the damages awarded to Jaffee is, standing alone, not dispositive. See City of Riverside v. Rivera, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986); Dunning v. Simmons Airlines, Inc., 62 F.3d 863, 873 & n. 13 (7th Cir.1995).