# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 14, 2008

Charles R. Fulbruge III
Clerk

No. 07-30674

ELGIE ABNER, HARRY BROOKS, JAMES EDWARD MARTIN, STEVE MAY, NAPOLEON PLAYER, JERRY LEE WALKER, LJ PLAYER, and WD ODOM, JR.

Plaintiffs - Appellees

v.

THE KANSAS CITY SOUTHERN RAILWAY COMPANY

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Louisiana

Before HIGGINBOTHAM, STEWART, and SOUTHWICK, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Eight plaintiffs, employees of Kansas City Southern Railway Company, sued the railway in district court, alleging race discrimination. They amended their complaint several times, eventually withdrawing their attempt to bring a class action and dropping several of their claims. The first trial resulted in a hung jury. After the second trial, a jury found for Plaintiffs and awarded Plaintiffs punitive damages but no compensatory damages. Plaintiffs filed for attorneys' fees and costs to recover expenses accrued in preparation for and during the first and second trials. The district court reduced the requested fees and costs, finding some to be unreasonable, and awarded Plaintiffs $446,777.12

in total.  Defendant appealed, urging that Plaintiffs should not be reimbursed for fees and costs accrued during the first trial.

I

Plaintiffs – originally pro se – filed a complaint against Defendant on April 29, 2003, alleging a pattern and practice of discrimination in hiring and promotion and disparate treatment-harassment.  Approximately four months later they sought to bring the case as a class action under Rule 23,[1] alleging that Defendant maintained a pattern and practice of race discrimination in violation of 42 U.S.C. § 2000e-2(a), subjected them to a hostile work environment in violation of Title VII, and caused intentional infliction of emotional distress under Louisiana tort law.  An amended complaint filed in early 2005 dropped the class action claim and alleged that Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), and 42 U.S.C. § 1981.  Plaintiffs alleged that Defendant maintained "a pattern of discrimination in employment on the basis of race," discriminated "against plaintiffs because of their race in the terms, conditions and privileges of their employment" and in so doing acted with malice and reckless disregard for their federally protected civil rights, intentionally discriminated against Plaintiffs because of their race, and created, permitted, and failed to eradicate a hostile work environment – also with malice and reckless disregard for their civil rights.  They again alleged that the hostile work environment caused intentional infliction of emotional distress under Louisiana law, seeking a declaratory judgment, injunctive relief, damages, and attorneys' fees.  Prior to trial, Plaintiffs narrowed their case to a hostile work environment claim.  In the meantime, the parties prepared for trial, exchanging initial disclosures, taking depositions,[2] exchanging materials through discovery,

---

[1] Fed. R. Civ. P. 23.

[2] The magistrate judge assigned to address pre-trial matters granted Plaintiffs' request to take seven depositions in addition to the ten originally permitted.

listing "may-call" witnesses, moving for admission of expert witness testimony, submitting expert reports, and filing various motions to quash, a motion to dismiss, a motion for severance or separate trials, and motions in limine.

The case was tried from June 20 through June 28, 2005.[3] After the sixth day of trial – at the close of Plaintiffs' case in chief – Defendant moved for judgment as a matter of law. Defendant also moved for judgment as a matter of law at the close of all evidence, and Plaintiffs filed a motion for judgment as a matter of law. All of these motions were unsuccessful. On the seventh day of trial, June 28, the district court submitted to the jury five questions for each Plaintiff.[4] The jury deliberated for approximately four and one-half hours. The next day, after deliberating for nearly two more hours, the jury advised the court that it would not be able to reach a unanimous decision, and the court declared a mistrial.

---

[3] Defendant requested a continuance of the June 20 trial date, which the court denied.

[4] The jury was asked,

> 1. Do you find by a preponderance of evidence that [the individual plaintiff] was subjected to a hostile work environment . . . ? [Yes or No]
>
> 2. [To be answered only if the jurors answered "Yes" to Question 1] Do you find by a preponderance of evidence that KCS exercised reasonable care to prevent and promptly correct any racially harassing behavior? [Yes or No]
>
> 3. [To be answered only if the jurors answered "Yes" to Question 2] Do you find by a preponderance of the evidence that [individual plaintiff] unreasonably failed to take advantage of any preventive or corrective opportunities offered by KCS, or to otherwise avoid harm? [Yes or No]
>
> 4. [To be answered only if the jurors answered "No" to Question 3] What do you find to be the total amount of compensatory damages suffered by [individual plaintiff] as a result of being subjected to a hostile working environment by KCS? $ _____
>
> 5. What do you find to be the total amount of punitive damages to which [individual plaintiff] is entitled as a result of being subjected to a hostile working environment by KCS? $ _____

3

A new trial was set, and the parties continued their preparatory work. Plaintiffs filed a motion to depose a witness for trial purposes. This witness was on Plaintiffs' final will-call list but had been unavailable to testify at the first trial. Defendant moved for summary judgment, which the district court denied as untimely. Both parties filed motions in limine based on their experiences during the first trial. Defendant, for example, requested the court to prohibit the use of testimony relating to prior affiliations of a supervisor, urging, "As demonstrated by the first trial, such evidence is not relevant to the issues . . . is highly prejudicial, and will needlessly prolong the trial with evidence on collateral matters." The court denied Defendant's motion, although shifting ground in its ruling. Plaintiffs urged in their motion in limine that "[t]his court ruled at the previous pre-trial conference that defendant would not be permitted to present exhibits including its sexual harassment and equal opportunity policy statements. . . . Nonetheless, defendant presented documentary evidence at the prior trial which is irrelevant to the issues in this racial harassment case." Plaintiffs asked that the court not admit this evidence at the second trial. Defendant responded that its "equal employment opportunity policy and its sexual harassment policy were allowed during the first trial as relevant evidence and were presented to the jury as exhibits. . . . Plaintiffs should not be allowed to change this now." The court granted Plaintiffs' request to exclude evidence of Defendant's sexual harassment policies but denied the request to exclude the equal employment opportunity policy. Plaintiffs also reminded that court that it had prevented them from presenting "me too" witnesses at the first trial, yet "defendant then argued at trial that only eight plaintiffs are in court," thus "implying that the other employees in the mechanical department do not find the work environment hostile." The court granted Plaintiffs' request to preclude Defendant from introducing evidence on the number of mechanical department employees who had not filed suit.

On March 27, 2006, the second trial began. On the sixth day, Defendant orally moved for judgment as a matter of law at the close of Plaintiffs' case, and Plaintiffs filed a motion for judgment as a matter of law. The court denied both. On the seventh day of trial, Plaintiffs orally moved for a directed verdict on the affirmative defense issue, and Defendant renewed is motion for judgment as a matter of law and orally moved for mistrial. The court denied Plaintiffs' motion and took Defendant's motion for judgment as a matter of law under advisement. On the eighth day, the court instructed the jury and deliberations began. The jury returned a verdict in favor of Plaintiffs the following day, answering the same questions asked during the first trial and awarding $0 in compensatory damages and $125,000 in punitive damages to each plaintiff. Plaintiffs orally moved for a nominal compensatory award. On April 7, 2006, the court entered a judgment ordering Defendant to pay each plaintiff $1 in nominal damages and $125,000 in punitive damages. After filing unsuccessful motions for mistrial, judgment as a matter of law, and alternatively for a new trial, Defendant appealed. This court affirmed, finding the nominal damages unnecessary.[5]

In the meantime, Plaintiffs moved the district court for attorneys' fees and expenses under Rule 54(d)(2),[6] 29 U.S.C. § 794 et seq., and the Civil Rights Attorney's Fees Awards Act,[7] which allows discretionary awards of attorney's fees for parties prevailing in § 1981 actions, among others. Plaintiffs described the course of proceedings, including depositions taken, meetings for trial preparation, attorneys' meetings with Plaintiffs, mediation, scheduling conferences, and other activities that occurred before each trial. Plaintiffs urged that "[a] plaintiff seeking attorney fees . . . need merely show that (1) he is a

---

[5] Abner v. Kansas City S. Ry. Co., 513 F.3d 154, 165 (5th Cir. 2008).

[6] Fed. R. Civ. P. 54(d)(2).

[7] 42 U.S.C. § 1988(b).

prevailing party and (2) that the fee requested is reasonable. . . . A plaintiff is considered a prevailing party for attorney's fees purposes if he succeeds on any significant issue in litigation that achieves some of the benefits the parties sought in bringing suit."[8]  Plaintiffs requested "attorneys' fees in the amount of $463,850.75 and out-of-pocket expenses in the amount of $140,978.42, for a grand total of $604,829.17." Defendant argued in its memorandum in opposition to the motion that it was "excessive in light of the low degree of success achieved by Plaintiffs, compared to the results sought and the time and expense put forward in pursuit of those results."  Defendant maintained,

> In the end, the Plaintiffs received one-fiftieth of the amount sought in damages at trial, and they succeeded on only one of their claims originally pursued.  Further, they failed to achieve the class action status they initially sought.  Now, their attorneys are asking for more than $600,000.00 in fees and costs, which represents more than half of the total dollars awarded to the Plaintiffs and includes money for time spent on losing efforts.

Defendant recognized that "Title VII permits a court, in its discretion, to allow a reasonable attorney's fee to a 'prevailing party'"[9] but maintained that

> there are several unreasonable aspects of Plaintiffs' attorneys' fee request. . . . First, Plaintiffs seek fees and expenses for claims that were not only unsuccessful, but voluntarily dropped shortly before trial. Second, Plaintiffs seek a full attorneys' fee award even though they did not achieve the full results they sought at trial.

Defendant  requested that the court drop the hours spent by attorneys on the claims and allegations that were "pursued but ultimately dropped" – those unrelated to the successful hostile work environment claim.  It also again urged, "Plaintiffs should also not be permitted to recover attorneys' fees for work done

---

[8] Citing Farrar v. Hobby, 506 U.S. 103, 109 (1992).

[9]  Citing 42 U.S.C. § 2000e-5(k); Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1047 (5th Cir 1998).

in connection with the first trial in this case, which was a fully unsuccessful effort." It requested "a reduction of at least fifty percent of the total fees and expenses." Further, it maintained that reductions were warranted "because of attorney overstaffing and duplication of efforts" and because the fee and expense request had "numerous unreasonable entries," citing excessive time for drafting letters, for example (two letters allegedly required three hours of work for each letter, and another letter to an expert witness allegedly required nine hours of work), and numerous hours spent on the unsuccessful "class action issues" and "work done during the first unsuccessful trial." Finally, Defendant disputed plaintiffs' request for a multiplier for the "novelty and complexities" of the case. Defendant did not contest Plaintiffs' attorneys' hourly rate.

The district court held that Plaintiffs were entitled to reasonable fees under 42 U.S.C. §§ 1988 and 2000e5(k) and determined that an amount of $446,777.12 constituted "reasonable attorneys' fees and costs."[10] It used the lodestar method and looked to the twelve factors in Johnson v. Ga. Highway Express[11] for upward and downward adjustment of the calculated lodestar amount, rejecting the upward adjustment requested by Plaintiffs. It also recognized the Supreme Court's principle that "'the most critical factor in determining the reasonableness of a fee award in a civil rights suit is the degree of success obtained'"[12] and that the party requesting the award bears the burden of showing reasonableness.[13] The court concluded,

---

[10] Abner v. Kansas City S. Ry. Co., 2007 WL 1805782 at *1 (No. 03-0765, W.D. La. June 21, 2007).

[11] 488 F.2d 714, 717-19 (5th Cir. 1974).

[12] Abner, 2007 WL 1805782 at *1 (quoting Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1047 (5th Cir. 1998)).

[13] Id. at *2 (citing Saizan v. Delta Concrete Prods. Co., 448 F.3d 795, 799 (5th Cir. 2006)).

> In the instant case, the plaintiffs failed to carry their burden of proving that they exercised billing judgment. . . . In short, the billing records contain no indication of the hours the attorneys wrote off as redundant, unproductive, or excessive during this lengthy litigation. Accordingly, a downward adjustment of ten percent is warranted to account for billing judgment.[14] [And in a footnote]: The ten percent offset will be applied after all specific, non-compensable or erroneous charges have been subtracted from the initial lodestar figure.[15]

After calculating the lodestar – tabulating the hours spent by Plaintiffs' four attorneys and multiplying this time by their hourly rates – the court investigated the reasonableness of the hours expended. It reduced the hourly rate of one of the attorneys, removed some duplicate entries, and found that many other entries were "permeated with ambiguities."[16] Accordingly, it determined that it could not "judge the reasonableness of the time expended" and concluded that a "fifteen percent reduction [of the time expended] is warranted," applying a fifteen percent offset "after all specific non-compensable or erroneous charges have been subtracted from the initial lodestar figure."[17]

> Next, the court looked to the success obtained. The court concluded,

> Because the hours billed must have been for time reasonably spent on work in furtherance of claims on which the plaintiffs prevailed, the plaintiffs can be awarded no fees for the time and effort expended on the motion for injunctive and declaratory relief, as such motion was denied. This results in a reduction of $3,625. Likewise, the plaintiffs cannot recover fees for time expended on the research

---

[14] The court later added a fifteen percent downward adjustment for "the hours reasonably expended." Id. at *4.

[15] Id. at *2, *2 n.2.

[16] Id. at *4.

[17] Id.; id. at *4 n.8.

of class action issues. . . . Therefore, a reduction of $714.50 is appropriate.[18]

The court also reduced the award by $1,500 for another bill that "likely involved work on class action issues."[19] Finally, it addressed whether the lodestar figure should be adjusted downward or upward based on the level of Plaintiffs' success, declining to make an upward adjustment and refusing to "adjust [downward] the lodestar amount for limited success" because "[a]t the end of the day, the winner is clear: the plaintiffs successfully proved a Title VII violation."[20] Moving to the question of costs, the court disallowed a "number of requested costs" that were either undocumented or unsubstantiated, involved uncompensable local fax costs (normal overhead costs), or were unenumerated in 28 U.S.C. § 1920 or accepted as costs under § 2000e-5(k).[21] In total, the court subtracted $43,591.52 from requested costs and $114,460.53 from requested fees.[22] Following these reductions, including the 10% and 15% reductions from fees for unreasonableness, it awarded $349,930.22 in attorneys' fees and $97,386.90 in costs.[23]

In the process of calculating fees and costs , the district court specifically addressed the issue that faces us – whether the award should include fees and costs from the first trial. The court observed, "KCS . . . asserts that the 'Fifth Circuit does not authorize an award of attorney's fees for such work . . . .'"[24] The

---

[18] Id. at *5-*6.

[19] Id. at *6.

[20] Id. at *7.

[21] Id. at *8.

[22] See id. at *7, *9.

[23] Id. at *9.

[24] Id. at *6.

court noted that the "First, Second, and Seventh Circuits have held that the prevailing party in a subsequent trial may recover fees for work done for and in a prior trial."[25] It further recognized that the Supreme Court has instructed lower courts to focus on "'the ultimate result'"[26] and cited the Seventh Circuit's holding that "'[w]hen two trials are required to achieve the 'ultimate result,' a plaintiff should be compensated for both trials, so long as the time spent at both was reasonably expended.'"[27] The district court concluded that "[t]he critical question is whether the time spent preparing for and conducting the first trial was reasonable" and that "[w]ith the exception of the unreasonable entries previously detailed above," it was.[28]

On appeal, Defendant does not object to the hourly rates or other discrete determinations and calculations underlying the district court's fee and cost award; rather, it urges that "it was an abuse of discretion to award Plaintiffs the attorneys' fees and costs that the first trial generated" because the Plaintiffs were not the "prevailing parties" at the first trial and the fees from work required during the first trial are not "reasonable," as the first trial was a "wholly unsuccessful effort." It requests that the panel "reverse the fee award representing the actual work done during the unsuccessful first trial."[29]

II

---

[25] Id. (citing Shott v. Rush-Presbyterian-St. Luke's Med. Ctr., 338 F.3d 736, 739 (7th Cir. 2003); O'Rourke v. City of Providence, 235 F.3d 713, 737 (1st Cir. 2001); Gierlinger v. Gleason, 160 F.3d 858, 876-79 (2d Cir. 1998)).

[26] Id. at *5 (citing Hensley v. Eckerhart, 461 U.S. 424, 431 (1983)).

[27] Id. at *6 (citing Shott, 338 F.3d at 739).

[28] Id. (citing Jaffee v. Redmond, 142 F.3d 409, 414, 416 (7th Cir.1998)).

[29] Kansas City "acknowledges that some of the pretrial work done in connection with the first trial was re-used and relied upon during the second trial. As a result, it "does not seek to reduce Plaintiffs' attorneys' fee award with respect to those fees."

We review a district court's fee award for an abuse of discretion,[30] bearing in mind that court's "superior understanding of the litigation"[31] and of the costs and fees reasonably incurred in that litigation. While Defendant objects to the fees and costs from the first trial on two separate grounds – urging that they were unreasonable and that Plaintiffs did not prevail – these inquiries are by necessity intertwined under the unique facts of this case. A prevailing party is a party who is successful "'on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit,"[32] whereas a fee award is unreasonable if a court has failed to adequately consider the "relationship between the amount of the fee awarded and the results obtained."[33] The "results obtained" factor under the reasonableness inquiry brings us back to the question of results and to what extent Plaintiffs "prevailed." To address Defendant's claim that the fees and costs were unreasonable because the "trial ultimately proved unsuccessful," we must consider in tandem the reasonableness of the fees and costs and the level to which Plaintiffs prevailed.

Defendant concedes that "[t]his Court has not decided the issue of whether a prevailing party in a subsequent trial may recover fees for work done in a prior trial in which that party did not prevail" but urges that the district court's reliance on cases from three other circuits, which have allowed attorneys' fee awards for multiple trials, was "misplaced" because the cases are distinguishable

---

[30] See, e.g., Volk v. Gonzalez, 262 F.3d 528, 534 (5th Cir. 2001) ("[W]e review the district court's award of attorney's fees only for an abuse of discretion. The factual findings supporting an award of attorney's fees are reviewed for clear error; the conclusions of law underlying the award are reviewed de novo.").

[31] Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)

[32] Id. at 433.

[33] Id. at 437.

and "their outcomes are directly contrary to the statutory authority of Title VII and Section 1988." We turn to those cases.

In O'Rourke v. City of Providence, the First Circuit reviewed two jury verdicts on a female firefighter's Title VII claim for sexual harassment. After the first trial, the jury entered a verdict for the plaintiff in the amount of $275,000. The trial court vacated the first verdict and ordered a new trial "on the grounds that evidence from before the charge period had been erroneously admitted."[34] The plaintiff had argued that the evidence was admissible under the continuing violation doctrine. After the second trial, the jury entered a verdict for $200,000 "based on evidence over a shorter period of time."[35] The district court denied the defendants' motion for a new trial after the second trial, and it awarded attorneys' fees to the plaintiff only for the second trial. The defendants appealed the denial of their motion for new trial, and the plaintiff also appealed, requesting attorneys' fees for the first trial and reinstatement of the first verdict.[36] The First Circuit reinstated the verdict from the first trial, finding that "the district court never explicitly addressed . . . [the plaintiff's] invocation of the continuing violation doctrine or why it would not apply. That omission was itself error."[37] It also found that "a reasonable jury could have found that . . . [the plaintiff] was a victim of a continuing violation" and that the court's error – in vacating the first verdict on the grounds that evidence beyond the state statute of limitations was admitted – was not harmless.[38] The court further held,

---

[34] 235 F.3d 713, 717 (1st Cir. 2001).

[35] Id.

[36] Id. at 726.

[37] Id. at 727.

[38] Id. at 727-28.

We also conclude that . . . [the plaintiff] is entitled to an award of attorneys' fees for the first trial, and not just the second trial, for the same reasons that we reinstate the verdict from the first trial. In its opinion regarding . . . [the plaintiff's] motion for attorneys' fees after the second trial, the court denied . . . [the plaintiff's] attorneys' fees for the first trial because "her counsel was responsible for the introduction of irrelevant and highly prejudicial evidence that resulted in a voiding of that trial result." That conclusion was in error.[39]

In this case, unlike O'Rourke, the first trial resulted in mistrial. But O'Rourke is informative in its implication that where a party does not cause the voiding of a trial, that party may receive fees.

Gierlinger v. Gleason, a Second Circuit case, is more similar to the present case but still not directly on point. In Gierlinger, a terminated police trooper filed a § 1983 claim against a major and troop commander, alleging that she was fired in retaliation for her sexual harassment complaints.[40] There were nine defendants at the first trial; the district court granted judgment as a matter of law to four of them. The jury found in favor of four of the remaining five defendants, finding only Gleason liable to the plaintiff for $340,000 in damages. Gleason appealed, and the Second Circuit vacated the judgment and remanded, finding that the court erred in instructing the jury.[41] At the second trial, the court sua sponte declared a mistrial after nine days, finding that "the trial had gotten out of control."[42] The jury after the third trial found financial damages of more than $100,000 for loss of the plaintiff's past and future income and awarded one dollar in damages for infliction of emotional distress. The plaintiff

---

[39] Id. at 737.

[40] 160 F.3d 858, 862 (2d. Cir. 1998).

[41] Id. at 867.

[42] Id.

moved for attorneys' fees and the district court granted the motion in part, refusing to award attorneys' fees for plaintiff's "appeal following the first trial, preparation for the second trial [which resulted in mistrial]" and denying in part "the fees requested for the second trial and for motion practice and trial preparation time between the second and third trials."[43] The plaintiff appealed, and the Second Circuit held that the district court abused its discretion in refusing to award attorneys' fees for the "66.3 hours spent by . . . [plaintiff's attorney] in preparing for the second trial, plus 103.1 hours in conducting that trial for two weeks prior to the district court's sua sponte declaration of a mistrial."[44] The Second Circuit found,

> [W]e cannot agree that it was appropriate to award no fees for trial preparation time. Despite there having been a prior trial of the case, no competent attorney would embark on a retrial without some preparation. This is especially true when there has been a lengthy interval between the two trials. . . . We conclude that it was unquestionably reasonable for . . . [the plaintiff's attorney] after the two-year hiatus, to, inter alia, review the three-week transcript of the first trial, review files to refresh his recollection, organize his proposed exhibits, and prepare his witnesses. . . . Second, we cannot agree that it was appropriate to compensate . . . [the plaintiff's attorney] for less than all of the time reasonably spent conducting the second trial, for the record belies the district court's rationale that . . .[the plaintiff's attorney] bore significant responsibility for the mistrial.[45]

Although the second trial in Gierlinger ended in mistrial, largely because of publicity, the Second Circuit held that plaintiff should receive attorneys' fees for that trial. Unlike here, the plaintiff had partially succeeded during the first trial; it was only the second that resulted in mistrial; and she again succeeded

---

[43] Id. at 876.

[44] Id. at 877-78.

[45] Id. at 878.

in the third. But as the Gierlinger court recognized, where a party is not at fault for causing mistrial, an award of attorneys' fees may be merited.

In Shott v. Rush-Presbyterian-St. Luke's Medical Center, a Seventh Circuit case, the plaintiff "prevailed on a disability discrimination claim against Rush"[46] under the Americans with Disabilities Act. At the first trial, the plaintiff brought claims of retaliation under Title VII in addition to discrimination claims. The jury found for defendant on the Title VII claims and for plaintiff on the disability-discrimination claim; it awarded her $250,000 in compensatory damages and $ 1 million in punitive damages.[47] The district court granted the defendant's motion to set aside the verdict, ordering a new trial on the grounds that the plaintiff presented her claims to the jury in a confusing and prejudicial manner and that the verdict was against the weight of the evidence.[48] The jury returned a verdict for the plaintiff again at the second trial, awarding $60,000 in compensatory damages and no punitive damages.[49] Addressing the plaintiff's motion for attorneys' fees, "[t]he district court found that based on the degree of success . . . [plaintiff] achieved in the litigation the award should be reduced by 33%."[50] The defendants appealed, arguing that the plaintiff "should not receive attorney's fees for the first trial because she engaged in an unreasonable trial strategy that caused the verdict to be set aside."[51] Citing Gierlinger and O'Rourke, the Seventh Circuit found, "Other circuits have also observed that so long as a plaintiff's actions are not responsible for the need for a second trial, the

---

[46] 338 F.3d 736, 737 (7th Cir. 2003).

[47] Id. at 738.

[48] Id.

[49] Id. at 739.

[50] Id.

[51] Id.

plaintiff may be compensated for time spent on both proceedings."[52] The Seventh Circuit also cited its own holding in Jaffee II, which provides,

> While an unreasonable argument that necessitates further proceedings may justify denying compensation for those proceedings, the district court in this case found that Jaffee acted reasonably.... [A] fee award is not automatically precluded because the second trial was 'necessitated by' a reasonable but unsuccessful argument."[53]

The Seventh Circuit ultimately concluded in Shott that the plaintiff should not receive attorneys' fees for the cost incurred during the first trial but should receive fees for the preparation leading up to the first trial, specifically holding that plaintiff

> We simply do not think it appropriate to award a litigant attorney's fees for a trial that was voided by her own unreasonable strategy. . . . We see no problem, however, with awarding fees for the work done in preparation for that trial because it is likely that this work benefitted the second trial as well.[54]

Combined with the Jaffee II holding, Shott implies that if the plaintiff's unreasonable behavior did not cause the first trial verdict to be vacated, a plaintiff may receive attorneys' fees for the expenses incurred during a trial that was later vacated. This is consistent with the cases we have discussed. In O'Rourke, where the defendant made a motion for a new trial – causing the district court to vacate the verdict – and the appellate court later reinstated the verdict from the first trial,[55] the First Circuit found, "The question is who should pay for the mistake, in the sense of bearing the costs of attorneys' fees for two

---

[52] Id. at 740.

[53] Jaffee v. Redmond, 142 F.3d 409, 416 (7th Cir. 1998).

[54] Shott, 338 F.3d at 742-43.

[55] 235 F.3d 713, 736 (1st Cir. 2001).

16

trials. Because the mistake was not caused by plaintiff, there is no reason to deny fees."[56]

The Supreme Court's decision in Hensley v. Eckerhart, cited by the district court in awarding attorneys' fees to the plaintiffs in this case, is also informative. In Hensley the Court held,

> A plaintiff must be a "prevailing party" to recover an attorney's fee under § 1988. The standard for making this threshold determination has been framed in various ways. A typical formulation is that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."[57]

The Court also observed,

> Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.[58]

What these cases teach us is that the question of whether a party "prevailed" and whether a fee award is "reasonable" is not one to parse too thinly – whether by individual claim or the number of trials required to reach a result. The "overall relief" obtained in this case was substantial: each plaintiff received a punitive damage award of $125,000. And plaintiffs ultimately

---

[56] Id. at 737.

[57] 461 U.S. 424, 433 (1983) (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-279 (1st Cir. 1978)).

[58] Id. at 435 (emphasis added).

"prevailed" on their claim of a hostile work environment.  At the second trial, the jury found that Defendant had subjected Plaintiffs to a hostile work environment and had failed to "exercise . . . reasonable care to prevent and promptly correct any racially harassing behavior," awarding each plaintiff a large sum. Moreover, work done during the first trial – not simply in preparation for the first and second trials – contributed to this result.  Plaintiffs' claims in the first and second trial arose from the same set of facts and evidence – both trials centered around hostile work environment discrimination.  And the first trial allowed witnesses to become familiar with the case and the trial process. Plaintiffs' attorney explained at oral argument that at least one of Plaintiffs' experts had rarely, if ever, before testified; he was a key witness at both trials, and his experience testifying at the first trial enhanced his understanding of the case.  The first trial also drew out important evidentiary issues that were disputed prior to the second trial, as shown by Plaintiffs' and Defendant's motions in limine that referred directly to issues from the earlier trial.  And Defendant does not contend that Plaintiffs caused or contributed to the first mistrial.

Rather than looking at each trial in isolation, it is appropriate for a district court under Hensley to focus on the ultimate result of the case, as the trial court did here. As the Court in Hensley instructs,

> The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the "results obtained." This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief. In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award? . . . . The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the

award to account for the limited success. The court necessarily has discretion in making this equitable judgment.[59]

Under the reasonableness inquiry – the rule of the case here – the district court may take into account and discount for repetitive work, as may occur when there are two trials. It may also consider hours that it deems unnecessary or excessive, tailoring an award to the individual circumstances of the case with which it is most familiar. The district court carefully considered Plaintiffs' level of success and the hours invested to obtain that success. As part of this inquiry it considered the reasonableness of the time spent during the first trial, stating, "[T]hat the first trial here resulted in a mistrial is not dispositive. The critical question is whether the time spent preparing for and conducting the first trial was reasonable."[60] It cut out the fees it deemed unreasonable, stating,

> Because the hours billed must have been for time reasonably spent on work in furtherance of claims on which the plaintiffs prevailed, the plaintiffs can be awarded no fees for the time and effort expended on the motion for injunctive and declaratory relief, as such motion was denied. . . . Likewise, the plaintiffs cannot recover fees for time expended on the research of class action issues.[61]

In so finding, the district court identified the amounts charged for the claims on which plaintiffs did not prevail prior to the first trial and subtracted these amounts from the lodestar figure. It also cut out other expenses it deemed "unreasonable," whether because the descriptions of the work performed were too vague or the number of hours spent were too high. In other words, the district court followed what the Supreme Court has instructed courts to do in Hensley: it cut out the fees charged for work on unsuccessful claims and for any

---

[59] Id. at 436-37.

[60] Abner, 2007 WL 1805782 at *6.

[61] Id. at *5 (internal citation omitted).

other work that it deemed unreasonable. It then looked to the "ultimate result," concluding that the plaintiffs merited a fee and cost award for the first trial– with the exception of the fees deemed unreasonable by the court – looking to the plaintiffs' success "on their major claim of discrimination" and concluding, "At the end of the day, the winner is clear: the plaintiffs successfully proved a Title VII violation" – the "major thrust" of the litigation.[62] It quoted Shott's conclusion that "[w]hen two trials are required to achieve the 'ultimate result,' a plaintiff should be compensated for both trials, so long as the time spent at both was 'reasonably expended.'"[63] The district court provided a "concise but clear explanation"[64] for its award, carefully considering the successful and unsuccessful portions of the case as well as the reasonable and unreasonable fees claimed by Plaintiffs.

The cases cited by the Defendants urging a different result do not mandate a reversal of the district court's fee award. In Farrar v. Hobby, a plaintiff in a civil rights suit won only $1 in nominal damages after requesting $17 million in damages.[65] The Court held that "a plaintiff who wins nominal damages is a prevailing party under § 1988"[66] but that "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all."[67] Plaintiffs in this case each received $125,000 in punitive damages – a judgment that was affirmed by the Fifth Circuit. This is a far cry from the nominal

---

[62] Id. at *7.

[63] 338 F.3d at 739.

[64] Hensley, 461 U.S. at 437.

[65] 506 U.S. 103, 106-07.

[66] Id. at 112.

[67] Id. at 115.

damages from Farrar, where the Court found that the "litigation accomplished little beyond giving petitioners the moral satisfaction of knowing that a federal court concluded that [their] rights had been violated in some unspecified way."[68]

In Daniels v. Hawkins, another case cited by Defendant, a Delaware federal district court refused to award attorneys' fees for the plaintiff's first trial because the Third Circuit had reversed the jury verdict from the first trial, holding that the district court had committed prejudicial error.[69] The court concluded, "Based on the Third Circuit's decision concerning the first trial the Court concludes that Plaintiff cannot be considered the 'prevailing party' with respect to either the motion in limine or the first trial."[70] Although the plaintiff ultimately prevailed, the court declined to award fees for the trial that was reversed for error. Of importance in Daniels is the fact that the prejudicial error resulted from the trial court's admission of DNA test results proffered by the plaintiff, who later requested fees.[71] Unlike in Daniels, the first trial verdict was not reversed in this case. The jury simply could not reach a verdict. The district court did not abuse its discretion in awarding attorneys' fees and costs for the first trial.

AFFIRMED.

---

[68] Id. at 114 (internal quotations omitted).

[69] 2004 WL 1375298 at *2 (No. Civ.A. 96-009 JJF., D. Del. June 15, 2004).

[70] Id. (citing Clark v. Township of Falls, 890 F.2d 625, 626-27 (3d Cir.1989).

[71] Id. at *1.